Robertson, J.
There was no proper evidence in this case of any charter of the vessel in question, entitling the plaintiffs to any freight, and it was not pretended that Wells & Emanuel had any other authority to collect it than the charter in evidence. The allegation in the complaint, of a charter, was distinctly put in issue by being controverted in the answer. (Code, §§ 149, 168.) If the plaintiffs wished to avail themselves of the adrnission in such answer of a charter containing the particular provisions therein alleged, he should have read it, and it would then have been evidence for the defendant of such provisions, (Dorlon v. Douglass, 6 Barb., 451; Stuart v. Kissam, 2 Id., 493,) and its effect would be confined to the issue raised. (Robins v. Maidstone, 4 Q. B., 811.) The specific denial of any other charter but that admitted, puts in issue the existence of any other charter giving the plaintiffs the right to the freight. (Troy & Rutland R. R. Co. v. Kerr, 17 Barb., 581; Swift v. Kingsley, 24 Id., 541.) The charter set up in the answer, if it be the one relied upon by the plaintiffs, gave them no right to freight unless that exceeded 25,000 dollars and expenses, of which there was no proof in this case, and such.proof, upon that charter, the plaintiffs were bound to give.
There was evidence in this case, that Wells & Emanuel procured the freight for the vessel, and made the negotiation with the United States navy agent for the shipment of the goods in question to Mare’s Island, but they signed *492 the bill of lading as agents for the captain, and only-claimed to be entitled as charterers to the freight. That bill of lading was only signed by Wells & Emanuel, and not by any officer of the United States government, and was kept in their possession until April, I860,- when they sent it to collect the freight on it from the government officers, and left it in the naval storekeeper’s office; no obligation was therefore imposed on the United States government or officers by that document; there was no evidence that they ever assented to its terms or agreed to pay Wells & Emanuel the freight; indeed, the agreement, if any, is professed to be made for the captain of the vessel. There was, therefore, no agreement by the naval storekeeper to pay them the freight established.
The answer also controverts and puts in issue any shipment of the goods in question, pursuant to any agreement with Wells & Emanuel, and avers they were put on board in pursuance of the charter set up in the answer, and a bill of lading given therefor, in the name of the master, by the defendants as his agents. This is far from admitting any liability by the United States officers to Wells & Emanuel.
The complaint alleges that Wells & Emanuel caused the goods in question to be conveyed to San Francisco, and from thence they were taken at the plaintiffs’ expense and by their procurement, to Mare’s Island, and delivered to the proper officers. The answer only admits that 'they forwarded them as agents of the ship, and alleges they were paid six hundred and twenty-five dollars therefor. It is true the defendants have not denied that they carried them otherwise than as agents, but the plaintiffs did not claim that their allegation was not controverted, but only that it was admitted.
Besides the defects in the plaintiffs’ evidence, there is a fatal objection to their recovery against the defendants. The latter claimed only as agents of the captain of the vessel, (Stetson;) the bill against the government was made out in his name; the receipt was signed by them as *493 agents for Mm, and the bond of indemnity was given for the payment to him; it was the same thing as if the money had been paid into his hands. I do not see how any notice to them not to collect as such agents, can make them • liable. The money had no earmark in the possession of the United States officers; never became the plaintiffs’ until it was paid over to the captain; was not converted by the defendants as the plaintiffs’ property. If they are responsible, every clerk sent by his employer to collect a bill claimed as due to the latter, is responsible to a third party for the money he may receive, if he happens to know that such third party claims to be paid for the same services. I do not see that the defendants, having received the money for the captain, could interpose as a defense to a suit by Mm, that the plaintiffs were entitled to it, or how, having been employed by him, they could be converted into agents for the plaintiffs.
These considerations are sufficient for the disposition of the case; the remaining question of the right of a party to sue another, with whom he has no privity, for money paid the latter by a supposed debtor, upon an. adverse claim, if that debtor be the Federal Government, need not be considered. It may, however, be noticed that neither the case of Munsell v. Lewis, (2 Den., 224,) nor Bradley v. Root, (5 Paige Ch. R., 632, 641, 642,) if closely scrutinized, will be found to go that length; there was privity with those cases, between the claimants, and the question itself was not discussed. No authority or reason can be shown for any general principle that any one can sue another for money paid by a third person to the latter, on a claim of right by him, merely because the second claimant ought to have been paid the same amount, for the same cause, by the same person, where there is no pretense of trust or authority, by the recipient, for such new claimant.
For the reasons before mentioned, the judgment should be affirmed, with costs.
White, J., concurred in tMs opiMon.
*494 Barbour, J. I concur in the conclusion; but only upon the ground that the plaintiffs failed to prove the "unconditional charter set up in their complaint.