SAME TERM.    *Hoyt, Mullett, Sill, and Marvin,* Justices.

## HADDOCK *vs.* KELSEY.

Where a person having an account against the post office department, for carrying the mail, presented the same, receipted by him, to a postmaster, who gave him a receipt therefor, agreeing to forward the same to the department, and to pay the amount to him, if paid by the department; *Held* that an action would lie against the postmaster upon his receipt and undertaking, on its being shown that he had received the money from the department; or that that item *in his* accounts had been *audited* and *placed to his credit;* without regard to the general state of the accounts between him and the department.

An account current between a postmaster and the post office department, as stated and filed in the office of the auditor of the treasury for the post office department, is evidence against, and binding upon, the United States, as to all the credits in favor of the postmaster; unless an appeal is made from the decision of the auditor, to the first comptroller of the treasury, within one year.

And in the absence of any proof on the subject, a court will not presume an appeal to have been made from a decision of the auditor of the treasury, relative to the accounts of a postmaster.

A copy of such an account current certified by the auditor and the postmaster general as having been duly compared with the original as stated and on file in the auditor's office, and as being a correct transcript of the whole of the original account, may be given in evidence in the courts of this state, with the like effect as the original; for the purpose of showing a credit given therein to the postmaster.

ERROR to the recorder's court of the city of Buffalo. Kelsey sued Haddock in assumpsit for money had and received, &c. Haddock was postmaster at Buffalo, in 1844, and Kelsey was captain of a steamboat running upon Lake Erie. To sustain his action the plaintiff produced and proved a receipt as follows:

"Received, Buffalo, Nov. 18, 1844, of Captain L. A. Kelsey, his receipt for mails carried by the Chesapeak, which are to be forwarded to the department and to be paid to him if paid by the department, amounting to $207,20.

(Signed)    C. C. HADDOCK, Postmaster."

He also gave in evidence a copy of an "account of mails received at the Buffalo post office by the steamboat Chesapeak," amounting to $207,20, which was receipted thus:

"Received, Nov. 18, 1844, from C. C. Haddock, P. M. at Buffalo, two hundred and seven dollars and twenty cents, in full for above.

(Signed)   L. A. KELSEY, Capt. St. Boat Chesapeak."

This copy was certified by the auditor for the treasury of the post office department, and by the postmaster general. The certificate calls the paper a receipt, and certifies that it had been duly compared, by the officer making the certificate, with the original on file in the office, in the account of said Haddock, and *that it was a correct transcript of all of said receipt.* The plaintiff then gave in evidence a paper purporting to be a copy of an account stated between the United States and the defendant as late postmaster at Buffalo, commencing in the year 1841, and ending in 1845. This account was certified by the auditor and the postmaster general, as having been duly compared with the original as stated and on file in the office, and that the said copy was a correct transcript of the whole of the original account. In this account it appeared that Haddock was credited January 21, 1845, with $207,20 for money paid by him to Kelsey "per receipt Nov. 18, 1844." The account shows a small balance against Haddock on the 15th of April, 1845. Objections were made, on the trial, to all the evidence offered by the plaintiff. The objections were overruled by the referee, and he reported in favor of the plaintiff $228,95. The recorder's court refused to set aside the report of the referee, and the defendant below brought error to this court.

*Seth C. Hawley,* for the plaintiff in error.

*A. G. Stevens,* for the defendant in error.

*By the Court,* MARVIN, J.   The receipt of Nov. 18, 1844, given by Kelsey to Haddock, was, upon its face, an acknowledgment that he had received from Haddock, as postmaster, the whole amount of the account; and this account and receipt in the hands of Haddock authorized him to charge the amount in his account with the post office department, and the department

was authorized to credit the amount in his account. This receipt was not conclusive upon Kelsey. He had a right, as between him and Haddock, to explain it, and show that in fact he had not received the money ; and for this purpose he introduced the receipt given to him by Haddock, bearing date the same day, which clearly shows that no money was paid to him, but that Haddock undertook to transmit the account, thus receipted to him, to the post office department, and to pay it to Kelsey if it should be paid by the department. This undertaking would make Haddock personally liable, on its being shown that he had received the money. The referee has found that he did receive the money : and if the evidence to show that fact was proper, I think it shows clearly that Haddock had received the money ; that is, it had been placed to his credit, with his assent, and he had received the benefit of it. It is fair to presume that he sent the account and receipt of Kelsey to the post office department as an item of his own account against the department, and in this way authorized the department to credit the amount to his account ; thus appropriating it to his own use. In this view of the case he would be liable to Kelsey whenever this particular item was audited and placed to his credit, without regard to the general state of the accounts. It would, if he authorized the credit to himself in account, be payment to him, and he would be liable on his receipt to Kelsey. The question therefore is, was the evidence to establish the fact of the credit to Haddock at the post office department properly received ?

It will be seen by the 6th section of the " act to reduce into one the several acts for establishing and regulating the post office department," passed March 3, 1825, that Haddock, as postmaster, had authority to pay the account of Kelsey without transmitting it to the department to be audited and allowed. And the department undoubtedly supposed that he had acted under this law and had actually paid the account, and taken Kelsey's receipt as his voucher. The 8th section of the post office law, passed July 2, 1836, provides for the appointment of an "auditor of the treasury for the post office department,

whose duty it shall be to receive all accounts arising in the said department, or relative thereto, to audit and settle the accounts and certify their balances to the postmaster general." It then provides that the postmaster general, or any person whose account shall be settled, may within twelve months appeal to the first comptroller of the treasury, whose decision shall be final and conclusive. The account current between Haddock as postmaster, and the post office department, (or rather the United States,) a certified copy of which was given in evidence, was an account made out by the "auditor of the treasury for the post office department," in pursuance of the above provision ; and he certified that the copy of the account "has been duly compared by me with the original as *stated* and now on file in this office, and that the said copy is a correct transcript of the whole of said original account." An account rendered by the proper officers of the treasury, or post office department, containing credits, is evidence against the United States in favor of the individual credited ; and in many cases "copies of bonds, contracts, and other papers relating to, or connected with, the settlement of any account between the United States and an individual, when certified" in the manner provided by the acts of congress, are made evidence. It has been held by the supreme court of the United States, that when an account is stated by the proper officer with an individual, the credits are binding upon the United States. In the *United States* v. *Jones*, (8 *Pet.* 383,) the court say, "The accounting officers of the treasury act upon the accounts, and give to the credits, as entered, their official sanction. The vouchers of an individual are all submitted to these officers, and their decision has always been considered as conclusive upon the government, but not so as against the individual." The court is here speaking of an *account stated*, and not of " bonds,.contracts, &c." copies of which, when properly certified, are made evidence by act of congress. (*See also Cowen & Hill's Notes to Phil. Ev. note* 804.)

The *stated account*, then, between Haddock and the United States was binding upon the latter, unless an appeal was taken

Haddock *v.* Kelsey.

within a year as provided by the 8th section of the act above cited; and we are not to presume an appeal. As the account stood, it showed *prima facie* that Haddock had received the full benefit of the account receipted to him by Kelsey. The original account, then, would have been proper evidence; and by an act of our legislature passed May 12, 1846, (*Sess. Laws of* 1846, *p.* 303,) it is enacted that "A copy of any act, proceeding, record, document, roll, warrant, order, or other paper or writing, now or hereafter remaining in any of the departments of the government of the United States, may, when certified by the head or acting chief officer at the time being of such department, to have been compared by him with the original, and to be a correct transcript therefrom and of the whole of such original, and attested by the seal of his department, be given in evidence in all courts of this state with the like effect as the original." I think I have shown that the original account as stated and on file would have been evidence against, and binding upon, the United States as to all the credits in favor of Haddock, and the act above cited authorizes the giving in evidence of a certified copy of the stated account. This stated account was a paper directed by law to be prepared. It was a proceeding authorized and directed by law, and was such an official paper or document as was intended to be embraced by the general terms of the statute. There was no error in the admission of the evidence.

The demand of the plaintiff was for money received by the defendant for his use. It was liquidated, and ought to have been paid, as soon as the defendant was advised that it had been credited to him in account; and from that time it bore interest.

The judgment of the recorder's court must be affirmed.