The Troy and Rutland Railroad Company *vs.* Kerr.

17b 581
22ap546

17b 581
75 AD¹353

An admission in a special plea or answer, upon which issue is taken, cannot be used on the trial as a general admission of a material fact alledged in the complaint, when the whole complaint has been denied by a prior answer.

As there is no law authorizing or requiring a paper containing the mere subscriptions to the capital stock of a railroad corporation (not the articles of association) to be filed in the office of the secretary of state, a copy thereof, certified under the seal of the secretary of state, is not admissible as primary evidence.

An action for calls will lie against a subscriber to the capital stock of a railroad corporation, on an express promise to pay for it, although the corporation also has power to declare his stock forfeited for non-payment.

*It seems* one cannot become a member of a raiload company, under the act of 1850, without payment of 10 per cent, on his subscription. Otherwise, under the law of 1848.

Where there is no fraud, one who signs the articles of association to organize a railroad corporation cannot, in an action for the calls, show that the road is in fact longer than the distance stated in the articles.

A lease by a railroad corporation, of a part of its road and franchises during the continuance of its charter, and a transfer of the remainder also, for the same time, does not, *ipso facto*, dissolve the corporation.

*It seems* one railroad corporation cannot lease its road, or give up the management of its line to another, nor delegate its powers, without the authority of the legislature.

Such lease would not discharge a subscriber to the stock from his liability to pay calls on his subscription.

Troy and Rutland Railroad Company *v.* Kerr.

A charter to a private corporation must be accepted. And the rule is the same as to amendments. After a charter has been accepted, courts may, in some cases, perhaps, compel the corporation to fulfill the purposes of its creation; and a majority of the corporators may control, when confined to the ordinary transactions of the company, and consistent with the original object of its formation. But every thing relating to the organization of a private corporation is mere matter of individual contract; and the compact which is to clothe its members with an artificial, corporate existence, must receive the voluntary assent of the whole.

K. subscribed to the capital stock of a railroad company, which was organized in 1849, with a capital stock of $1,500,000. In 1851 the articles of association were amended under the general law of that year relative to railroads; and the capital stock reduced to $325,000, and the northern *terminus* of the road was changed, so as to shorten it nearly one half of the distance mentioned in the original articles. The company also transferred a part of the remainder of the road, and leased the rest to another corporation, during the continuance of its charter. In the fall of 1851 K., on being called upon for the payment of calls upon his stock, refused to pay them. In an action by the company, for the amount of the calls, *Held* (HAND, P. J. *dubitante*) that the plaintiffs were entitled to recover.

THIS action was brought to recover calls made by the plaintiffs upon the defendant's subscription to the capital stock of their company. The complaint alleged that the plaintiffs were, and had been, ever since the 2d day of July, 1849, an incorporated company duly organized pursuant to the provisions of two acts of the legislature, entitled severally "An act to authorize the formation of railroad corporations, passed March 27, 1848," and "An act to declare the public utility of a railroad from Troy to the state line of Vermont, passed April 10, 1849," and the acts amending the same. That in contemplation of the organization of said company, and for the purpose of constructing, owning and maintaining said contemplated railroad, to wit, in the month of June, 1849, the said defendant and divers other persons became subscribers to the stock of the aforesaid then contemplated railroad, by severally signing, executing and delivering an agreement in writing, of which the following is a copy, to wit: "Whereas, the legislature of the state of New-York, on the 10th day of April, 1849, passed an act entitled 'An act to declare the public utility of a railroad from Troy to the state line of Vermont.' Now, for the purpose of constructing, owning and maintaining

said railroad, we, the undersigned, agree to pay the amount set opposite to our names, respectively, towards the stock of said contemplated railroad, and thereby we respectively become subscribers to the stock of such contemplated railroad, to the amount set opposite to our respective names." That said agreement was signed and executed by a large number of persons, each setting opposite to his signature the amount for which he became a subscriber to the capital stock of said company, and which he thereby agreed to pay to said company. That, among others, the defendant signed and executed the said agreement, and set opposite to his name the sum of five hundred dollars, which he thereby agreed to pay said company, which subscription of said defendant was immediately, after the organization of said company, duly transferred to the regular books of the company. And after the defendant had subscribed as aforesaid, to wit, on or about the 29th day of June, 1849, he subscribed to the articles of association of said company his name and his place of residence, to wit, Jackson, in said county, and the number of shares of stock taken by him, to wit, five shares, amounting to five hundred dollars, the shares of such stock being one hundred dollars each; by means whereof, and by force of the statute in such case made, the defendant became and was a stockholder in said company, and entitled to five shares of its stock, and became liable to pay therefor to the plaintiffs the sum of five hundred dollars and the interest thereof. The plaintiffs alleged that the requisite amount of the capital stock of said company was in due time subscribed, and that relying upon the faithful payment by the defendant and the other subscribers to said capital stock of the amount by him and them respectively subscribed, the plaintiffs had expended large sums of money, and incurred liabilities, in constructing the said railroad, amounting in all to the full amount so subscribed. That the directors of said company, after its organization as aforesaid, required the whole of said capital stock so subscribed to be paid in installments of ten per cent each, the first installment to be paid between the first and tenth days of of April, 1850; the second installment to be paid between the first and fifth days of July, 1850; the third installment to be

paid between the 15th and 20th days of August, 1850; and one installment to be paid in each and every month thereafter until the whole thereof should be paid; the last of which installments became due and payable on or about the first day of March, 1851, and which installments were required by said directors to be paid to the president of said company at Salem, or to the treasurer thereof at Cambridge, and of which request and requirements the defendant had due notice before that time. That the said president and treasurer had at all times, since the said first day of April, 1850, been ready to receive the amount of said installments, or any part thereof, at the places above mentioned for the payment thereof, but that the defendant had refused, and still did refuse to pay the said sum of five hundred dollars, or the interest thereof, or any part thereof, and that the same was due to the plaintiffs from the defendant for the said shares of the capital stock of the company; wherefore the plaintiffs demanded judgment against the defendant for the sum of five hundred dollars, and interest on each installment thereof from the time when the said several installments became due respectively, together with costs.

The defendant put in an answer alleging that it was not true, as alleged in the complaint, that the plaintiffs were or had been an incorporated company duly organized pursuant to the provisions of the act specified in said complaint; and the defendant further denied each and every allegation, statement or averment in the said complaint contained. And the defendant in further answer to said complaint, and as the first ground of his defense thereto, alleged that in or about the month of June, 1849, a project was in contemplation, of organizing a corporation under the several acts specified in said complaint, for the purpose of constructing, owning and maintaining a railroad from some convenient point in or near the city of Troy through the counties of Rensselaer and Washington to some convenient point in the easterly line of the state of New-York, adjacent to or near the town of Poultney in the state of Vermont, so as to connect with the Rutland and Washington Railroad Company. That the defendant, for the purpose of aiding said project, subscribed the instru-

ments set forth in said complaint, and for no other purpose. That subsequently proceedings were had in furtherance of said project, which resulted in the organization of an association supposed to be incorporated by the name of the Troy and Rutland Railroad Company, being the same company plaintiffs in this action. That said organization was effected for the same purpose above specified and no other; and for the same purpose the defendant became a subscriber to the articles of association specified in said complaint. That said organization subsequently, and previous to the commencement of this action, abandoned the purpose and object aforesaid, and had not since resumed the same. *Second.* That the plaintiffs had voluntarily placed it out of their power to ever resume the effectuation of the purpose and object aforesaid, by conveying and transferring to the Rutland and Washington Railroad Company, for a valuable consideration from them received, all the right, power and authority had or held by the plaintiffs to construct, own and maintain so much of said projected road as lay north of the village of Salem, being about 26 miles of said road. And by conveying and transferring to the Troy and Boston Railroad Company, for a valuable consideration, all the right, power and authority had or held by said plaintiffs to construct, own or maintain so much of said projected road as lay south of Eagle Bridge in said county of Rensselaer, being about 23 miles of said road. And by leasing the said projected road from Salem to Eagle Bridge aforesaid, a distance of about 17 miles through, and constituting all the residue of said road to the Rutland and Washington Railroad Company, together with all the rights and franchises of said plaintiffs to maintain, use, occupy and run the same for and during the time of the existence of said plaintiffs as declared in and by the articles of association aforesaid, and without any power reserved to said plaintiffs to maintain the said road or have any power, control or supervision over the same. And by thereafter, and before the commencement of this action, contrary to the terms of said articles of association, locating at least six miles of said road in the state of Vermont without the consent of said defendant. And by altering the said articles of association under which the plain-

tiffs were organized, and after the defendant had subscribed the same as aforesaid, so that the purpose thereof as originally declared in and by said articles was altered and changed, and instead of being to construct, own and maintain a railroad from Troy to Poultney, was merely the construction of one from Eagle Bridge to the village of Salem aforesaid, and by reducing their capital stock from one million five hundred thousand dollars down to less than one-third thereof. And the defendant further alleged that each and every of the several acts above stated were made and done without his consent. *Third.* That there was no consideration whatever received by the defendant for the promsies and undertakings described in the plaintiffs' complaint, but the same were made and given entirely without consideration, and were therefore null and void. *Fourth.* That the sole and only motive or consideration for his becoming a subscriber to said articles of association, or assuming any of the undertakings described in said complaint was, that in consideration thereof the plaintiffs agreed with the defendant to construct, own and maintain a railroad from in, or near, the city of Troy, to at, or near, the state line at Poultney in the state of Vermont, and through the counties of Rensselaer and Washington. That the plaintiffs had entirely failed to comply with said agreement on their part; that they had abandoned the purpose and object aforesaid, had voluntarily placed it beyond their power to perform said agreement, and had by their own acts rendered it impossible so to do; the particulars whereof were fully stated in the defendant's second ground of defense, and to that part of which he referred, and prayed it might be taken as a part of the fourth ground of defense, without again repeating the same. And the defendant insisted that by reason of the facts aforesaid, the consideration for said agreement on which it was sought to make him liable, had not been performed by the plaintiffs, and the defendant was thereby discharged therefrom. *Fifth.* That in addition to the several facts before stated in the first ground of defense, and which he prayed might be taken as part of his fifth ground with the same effect as if again repeated, the plaintiffs heretofore, and previous to the commencement of this action,

entered into a contract to and with the Troy and Boston Railroad Company, who had constructed and now own and maintain a railroad over the space hereinafter described, whereby it was in substance agreed that the plaintiffs should not make or construct so much of their contemplated road as lay between Eagle Bridge and the city of Troy, being a distance of at least 23 miles ; but in place of so doing should furnish to said Troy and Boston Railroad Company, to be transported over the latter road, all passengers and freight passing south on the plaintiffs' road, and destined for stations on or beyond the line of the former road. *Sixth.* That the articles of association, under which the plaintiffs claimed to have been organized as a corporation, falsely stated the distance from one terminus to the other of said road at sixty miles, when in truth the distance was much greater, and was in fact about sixty-five miles ; and stock to the amount of one thousand dollars per mile was not subscribed in good faith, nor ten per cent paid thereon, nor ten per cent paid on that which was subscribed in cash, to the directors of said plaintiffs as required by law prior to the filing of such articles. *Seventh.* That at the time of the defendant's subscribing for the stock as stated in the complaint, he did not pay to the plaintiffs' directors ten per cent, in money, on the amount subscribed, and said subscription was not by law valid, and the plaintiffs had no authority to receive or take the same, and the same was so taken in violation of law and was void, and no action would lie for its recovery.

The cause was tried at the Washington circuit in October, 1853, before Justice Hand and a jury. The plaintiffs gave in evidence the 329th chapter of the laws of 1849, page 480. They then offered in evidence a certified copy of an instrument purporting to be an agreement to take shares of the plaintiffs' stock, and to have been signed by the defendant and others, in the words and figures following : " Articles of association. Whereas the legislature of the state of New-York, on the 10th day of April, 1849, passed an act entitled ' An act to declare the public utility of a railroad from Troy to the state line of Vermont :' Now for the purpose of constructing, owning and

maintaining said railroad, we the undersigned agree to pay the amount set opposite to our names respectively, towards the stock of said contemplated railroad, and thereby we respectively become subscribers to the stock of such contemplated railroad to the amount set opposite to our respective names. June 29, 1849." This was signed by the defendant, and the sum of $500 set opposite his name.

The following paper, signed by the defendant and other stockholders, was also given in evidence. "In pursuance of the act passed March 27, 1848, entitled 'An act to authorize the formation of railroad corporations,' and by virtue of an act passed April 10, 1849, entitled 'An act to declare the public utility of a railroad from Troy to the state line of Vermont,' the undersigned, being subscribers to the stock of such contemplated railroad, do hereby form ourselves into a corporation for the purpose of constructing, owning and maintaining such railroad, to be called and known by the name of the Troy and Rutland Railroad Company. The said corporation to continue for the term of fifty years from this date. The amount of the capital stock of said company is the sum of one million five hundred thousand dollars, ($1,500,000,) which is the actual cost of constructing the road, together with the cost for the right of way, motive power, and every other appurtenance for the completion and running of said road, as nearly as the same can be estimated by competent engineers. The said stock to consist of fifty thousand shares. The number of directors to manage the concerns of the company is thirteen, and the names of the directors who are now such directors, and are hereby declared to be such directors, and to hold their office until others are elected, are Alexander B. Law, Daniel Volentine, 2d, Franklin Stephens, William Law, Anderson Simpson, Gerrit W. Wilcox, Ahira Eldridge, Thomas Rice, John M. Stevenson, Doris Eldridge, Leonard Wells, James McKie and Jonathan Warner. Said road is to be constructed from the city of Troy, in the county of Rensselaer, to the easterly line of the state of New-York, in the county of Washington, adjacent to the town of Poultney, in the state of Vermont, and to pass through the counties of

Washington and Rensselaer; the length of such proposed road is sixty miles, as near as may be. The commissioners to open the books of subscription to the stock of this corporation, are Oren Kellogg, James Thompson, John P. Putnam, John S. Crocker, and William Law. Dated at Cambridge, June 29, 1849."

The execution of the articles of association was duly acknowledged by the associates, before a justice of the peace, on the 30th of June, 1849. Annexed was an affidavit, made by three of the directors, stating that sixty-one thousand dollars of stock of the company mentioned in said articles of association, which was at least one thousand dollars for every mile of the said road intended to be built, had been actually subscribed for the purposes mentioned in said articles of association, and that ten per cent thereon had actually and in good faith been paid, in cash, to the directors named in said articles. This affidavit was sworn to on the 30th day of June, 1849.

The plaintiffs then offered in evidence a certificate from the secretary of state, certifying that he had compared the preceding with the original articles of association of the Troy and Rutland Railroad Company, and the several instruments accompanying the same, filed in his office July 2, 1849, and that the same was a correct transcript therefrom and of the whole of said articles of association, and the papers accompanying the same.

The defendant's counsel objected that the agreement should not be received in evidence without proof of the defendant's signature; that the certificate of the secretary of state was not sufficient evidence of the signature; that the original papers should be produced; that the copies were not evidence of the signatures; that the agreement was without consideration or mutuality—was a mere experiment, not a subscription on the books, nor a contract with the plaintiffs; that ten per cent was not paid at the time. The objections were overruled, and the defendant's counsel excepted. The agreement aforesaid was then read in evidence. The plaintiffs then offered in evidence the certified copy of the articles of association, inserted above,

after the agreement. The defendant's counsel objected to this evidence, on the ground that it did not appear that all, or a majority, of the persons named in the act passed April 10, 1849, united in the articles of association. That it did not appear by proof that stock to the amount of one thousand dollars per mile of the contemplated road was subscribed in good faith, prior to the filing of such articles. Nor that ten per cent on the amount of stock subscribed was actually and in good faith paid in cash to the directors named in said articles. Nor that the affidavit required by the 2d section of the railroad act of 1848 was ever made ; that the certified copy thereof produced was not proper evidence ; that part of the law of 1848 making it evidence having been repealed by the railroad act of 1850 ; that the original articles ought to be produced ; that no action would lie to recover on the articles ; that the articles did not make the subscribers liable as stockholders. The several objections were overruled by the court, and the evidence admitted, and the defendant's counsel excepted, &c. The plaintiffs then offered in evidence a certified copy of their amended articles of association, passed March 6, 1851, which were in the words and figures following : "At a meeting of the stockholders of the Troy and Rutland Railroad Company held at the court house, in the town of Salem, on the 6th day of March, 1851, pursuant to public notice, it was on motion resolved, that the Troy and Rutland Railroad Company terminate its road at Eagle Bridge, in the town of Hoosick, in the county of Rensselaer, at a point convenient to connect with the Troy and Boston railroad, instead of the city of Troy, and that the capital stock of said company be reduced to three hundred and twenty-five thousand dollars, being a sum not less than ten thousand dollars a mile for each mile of said Troy and Rutland railroad to be actually constructed in this state, and that the articles of association of said Troy and Rutland Railroad Company now on file with the secretary of state be amended and altered accordingly ; and the directors of said Troy and Rutland Railroad Company are hereby authorized and directed to amend and alter said articles of association accordingly, for and on behalf, and as the act of said company,

under and by virtue of an act entitled 'An act in relation to railroad corporations, passed February 13, 1851.'

A true copy from the minutes.

C. A. ALLEN, Chairman.

WILLIAM LAW, Secretary."

" Amended articles of association of the Troy and Rutland Railroad Company. The said Troy and Rutland Railroad Company, under and by virtue of an act entitled ' An act in relation to railroad corporations, passed Feb. 13, 1851,' hereby alter and amend their articles of association filed with the secretary of state on the 3d day of July, 1849, so as to read as follows : In pursuance of the act passed March 27, 1841, entitled ' An act to authorize the formation of railroad corporations,' and by virtue of an act passed April 10, 1849, entitled ' An act to declare the public utility of a railroad from Troy to the state line of Vermont,' the undersigned, being subscribers to the stock of such contemplated railroad, do hereby form ourselves into a corporation for the purpose of constructing, owning and maintaining such railroad, to be called and known by the name of the Troy and Rutland Railroad Company. The said corporation to continue for the term of fifty years from this date. The amount of the capital stock of said company is the sum of three hundred and twenty-five thousand dollars, which is the actual cost of the construction of the road, together with the cost for the right of way, motive power, and every other appurtenance for the completion and running of said road, as nearly as the same can be estimated by competent engineers. The stock to consist of thirty-two hundred and fifty shares. The number of directors to manage the concerns of said company is thirteen, and the names of the directors who are now such directors, and are hereby declared to be such directors, and to hold their office until others are elected, are Alexander B. Law, Daniel Volentine, 2d, Franklin Stephens, William Law, Anderson Simpson, Garrit W. Wilcox, Ahira Eldridge, Thomas Rice, John M Stevenson, Doris Eldridge, Leonard Wells, James McKie and Jonathan Warner. Said road is to be constructed from the town of Hoosick, in the county of Rensselaer, commencing at a point near Eagle Bridge, in said town,

convenient to connect with the Troy and Boston railroad, to the easterly line of the state of New-York, in the county of Washington, adjacent to the town of Poultney, in the state of Vermont, and to pass through the counties of Rensselaer and Washington. The length of such proposed road in this state is thirty-two and one half miles, as near as may be. The commissioners to open books of subscription to the stock of this corporation, are Oren Kellogg, James Thompson, John P. Putnam, John S. Crocker and William Law. Dated at Cambridge, June 29, 1849.

In testimony whereof the said Troy and Rutland Railroad Company have hereunto affixed their corporate seal this sixth day of March, in the year one thousand eight hundred and fifty-one. B. BLAIR, President.

[L. S.] WILLIAM LAW, Secretary."

" At a meeting of the directors of the Troy and Rutland Railroad Company, held at Salem on the sixth day of March, 1851, present Bernard Blair, Cornelius L. Allen, Marvin Freeman, Jarvis Martin, William McKie, Alexander B. Law, William Law, Leonard Wells, John M. Stevenson and Ahira Eldridge, it was unanimously resolved, (two-thirds of the directors being present and voting,) that the foregoing amended and altered articles of association be adopted as the articles of association of the Troy and Rutland Railroad Company, in pursuance of the direction of the stockholders of said company. It was also unanimously resolved, (two-thirds of the directors being present and voting,) that, on due examination, it having been ascertained that a part of the line of the Troy and Rutland Railroad ought to be located and constructed in an adjoining state, to wit, the state of Vermont, now therefore, by virtue of the act entitled ' An act in relation to railroad corporations, passed February 13, 1851,' we do hereby locate the following portions of said line in said state of Vermont, to wit : commencing in the Vermont state line at a point therein, in or near Nathan W. W. Wilson's land in the town of Salem, thence northwardly through the towns of Rupert and Pawlet in said state to a point in said state line near Marks' Corners, and commencing again about three quarters of a mile north of said corners at a point in the said state line, and

running thence north about half a mile in the said state of Vermont to a point in said state line in the town of Granville, and county of Washington; and we do hereby reduce the capital specified in the original articles of association of the said Troy and Rutland Railroad Company to the sum of three hundred and twenty-five thousand dollars, being a sum not less than the amount required by law for the number of miles of said road to be actually constructed in this state.

A true copy from the minutes. B. BLAIR, President.

[L. s.]                         WILLIAM LAW, Secretary."

Appended to these amended articles was a certificate from the secretary of state, certifying that he had compared the same with the original amended articles of association of the Troy and Rutland Railroad Company on file in his office, and that the same were a correct transcript therefrom, and of the whole of said original.

This evidence was objected to by the defendant's counsel on the same ground as stated in the objections to the original articles, and that the same were no evidence of the existence or validity of the plaintiffs' corporation, or any evidence to charge the defendant. The court overruled the objections, and the evidence was received and read, and the defendant's counsel excepted. The plaintiffs then gave in evidence a copy of the by-laws of the plaintiffs' company, adopted by the board of directors on the 8th day of July, 1850. William Law, a witness on the part of the plaintiffs, testified that he was a stockholder and director in the plaintiffs' company. The original by-laws were passed the 8th of July, 1850. The plaintiffs' counsel read to the court and jury a part of the second section of the by-laws, in the following words, to wit : " No installment exceeding ten per cent on each share of capital stock subscribed, shall be called for in any one month. Interest shall be allowed at the rate of seven per cent on all installments until the road is completed and in running order." And also so much of the 14th section of the by-laws as was as follows, to wit : "It shall be the duty of the treasurer to keep all the original stock subscriptions, books and papers, and to publish all calls upon stock." The witness further testified that the first resolution of the board of directors for calls upon stock,

was passed at a regular meeting held at Salem on the fourth of March, 1850, as follows: "Resolved, that all subscribers to the capital stock of this company who have not paid in ten per cent upon their respective subscriptions, be called on by the treasurer to pay in ten per cent thereon, to him or his authorized agent, between the first and tenth days of April next." The second resolution for calls was adopted at a regular meeting of the board of directors held on the 30th day of May, 1850, and was as follows, to wit: "Resolved, that the subscribers to the capital stock of the Troy and Rutland Railroad Company be called upon by advertisement, in the Washington County Post, to pay ten per cent on their subscriptions, respectively, between the first and fifth days of July next, and that such subscribers may pay such further sum of their subscriptions at the same time, as they may choose." The last resolution for calls was made at a regular meeting of the board of directors, held on the 22d day of July, 1850, and was as follows, to wit: "Resolved, that payment of ten per cent upon the capital stock subscribed, shall be made between the 1st and 5th days of each month hereafter, until the whole of such subscriptions shall be paid, and that each subscriber is hereby called upon to make such payments upon their respective subscriptions."

John M. Stevenson, a witness for the plaintiffs, testified that he was a stockholder, director and treasurer of the plaintiffs' company. That after the resolutions for calls upon the stock were passed, due notice thereof was published by him in the Washington County Post, a newspaper printed at North White Creek, on the line of the road, and a printed notice of such calls was sent by him by mail to each subscriber for stock. Notice was so published and sent by him of each of the calls, immediately after the resolutions for calls were respectively passed by the board of directors. The notices were mailed at the post office at Cambridge, directed to each subscriber at his place of residence. Leonard Wells, a witness for the plaintiffs, testified that he had a conversation with the defendant in the fall of 1851, in his corn field, in presence of John M. Stevenson. The defendant's counsel objected to any evidence of a promise by the

Troy and Rutland Railroad Company *v.* Kerr.

defendant to pay, as imaterial, and not alleged in the complaint. Objection overruled, and evidence received—defendant's counsel excepting. The witness called on behalf of the plaintiffs to ask him to pay his subscription to the stock of the plaintiffs' company. He told the defendant that those of the subscribers who did not pay would be sued. He said he did not want any cost made, and said that he would pay it. After the witness started to go away the defendant called him back, and asked him if he thought he, the defendant, could get rid of paying his subscription. The witness told him he did not see how he could avoid the payment. He again said he would pay it.

Before the several witnesses, Law, Stevenson and Wells were sworn, it was admitted by the plaintiffs' counsel that each of them was a stockholder and director in the plaintiffs' company. And the defendant's counsel objected to each of said witnesses, on the ground that he was a party interested in the event of this action, and a person for whose immediate benefit the action was prosecuted. The court overruled the objections and the defendant's counsel excepted. The plaintiffs proved the amount due upon the defendant's subscription, including interest, and rested.

The defendant moved for a nonsuit, on the grounds, 1st. That there was no evidence that the defendant ever became a stockholder or member of the plaintiffs' corporation. That making the subscription produced did not make him a stockholder, or create any liability. 2d. That there was no proof of the payment of ten per cent, at the time of subscribing. 3d. That there was no sufficient proof that the plaintiffs were a corporation, on the several grounds before stated, or that the requisite number of shares was subscribed to authorize the plaintiffs to make calls for stock. 4th. That no proof had been given of a tender or offer of stock or delivery of the scrip to the defendant; that the only remedy of the plaintiffs was by forfeiture of stock. 5th. That the action was misconceived; the contract and proof both being to take shares, while the breach alleged was non-payment of calls. The action should have been for a refusal to take the shares. 6th. That no reply had been put in, and all the

defense was to be taken as true. The motion was denied by the court, and the defendant's counsel *excepted*. It was proved that ten per cent was paid at the time of subscribing the articles.

The defendant gave in evidence a writing, dated June 24, 1850, duly acknowledged, between the plaintiffs and the Rutland and Washington Railroad Company, by which the plaintiffs, in consideration of one dollar, did " sell, assign, convey, transfer, set over and lease to the said Rutland and Washington Railroad Company, their successors and assigns, all their right, title and interest of, in, and to such parts and portions of the said Troy and Rutland Railroad as lies north of the village of Salem and within the county of Washington, and all the franchises therewith connected, which they have or may hereafter acquire by law, as fully as they are by law authorized to do, to have and to hold the same and every part thereof for and during the continuance of the charter of the plaintiffs' company, clear and free from the payment of any rent." Before the said writing was received in evidence the plaintiffs' counsel objected to the same, on the ground that it was improper and irrelevant, and formed no defense to a collateral action like this. The objection was overruled and the evidence received, and the plaintiffs' counsel excepted. The plaintiffs conceded that the Rutland and Washington Railroad Company were in possession under the writing, and that the same was recorded in the Washington county clerk's office, June 25, 1850. The defendant also gave in evidence a lease from the plaintiffs to the Rutland and Washington Railroad Company, dated June 17, 1852, of the entire line of the plaintiffs' Railroad between the village of Salem and the point of connection with the Troy and Boston railroad south of Eagle Bridge, reserving an annual rent of $16,000 and one half the net profits of the entire line of the Troy and Rutland railroad during the whole term of the plaintiffs' charter, and that the lessees were in possession under the lease. This lease transferred to the lessees the right to operate and maintain the road. The plaintiffs objected to this evidence, before it was received, because the same was improper and immaterial, and no defense to this collateral action. The objection was overruled and the

évidence received, and the plaintiffs excepted, &c. The witness testified that the distance from Troy to Eagle Bridge was between 23 and 24 miles. On the 23d of February, 1850, there was a contract made between the plaintiffs and the Troy and Boston Railroad Company and the Rutland and Washington Railroad Company. The contract produced was the only one ever made by the plaintiffs with the Troy and Boston Railroad Company. The defendant offered this contract in evidence. The plaintiffs objected to it as improper and irrelevant. The objection was overruled and the evidence received, and the plaintiffs excepted. The agreement was as follows, to wit :

" Memorandum of an agreement between the Troy and Boston Railroad Company of the first part, and the Troy and Rutland Railroad Company and the Rutland and Washington Railroad Company of the second part. When said roads are built to Eagle Bridge, it is mutually agreed that a fair and just connection shall take place. That cars with passengers and freight belonging to parties of the second part shall be taken over the road of the other party to and from Troy agreeably to usage, at all times, without unnecessary delay, (accidents and unavoidable detentions excepted,) and at such hours as shall be designated by the said party of the second part; unless such time or hours shall interfere with a proper and just arrangement with roads above or east of Eagle Bridge, but in no case shall any advantage be given to any roads that may connect with the road of the party of the first part, or branches thereof, over the road of the party of the second part. And in case of disagreement, all questions shall be settled by submission to disinterested persons, to be agreed upon. It is also further mutually agreed, that said party of the first part shall allow the other party 20 per cent discount from the rates to Eagle Bridge, on all receipts for freight and passengers to and from Troy furnished by the party of the second part, and shall receive and deliver the same at their depot at Troy, and the said discount of rates being agreed upon as an equivalent for the use of their freight and passenger cars; the party of the second part taking the risk of cars, passenger and freight, and furnishing brakemen for the same ; but

all damages accruing from neglect or carelessness are to be charged to that party guilty of such neglect or carelessness. Said first party reserve the right of furnishing at their own expense another depot for their use, if deemed proper, and of making a branch to their depot, which shall be located within the city of Troy. It is also further mutually agreed, that both parties shall hereafter execute such further contracts and agreements with specifications as shall carry out or accomplish the object herein contemplated. In witness of which we have hereto subscribed our names to this triplicate contract at Troy, this 23d day of February, 1850." (Signed, &c.

The resolution to amend, and adopting the amended articles, passed by the plaintiffs' board of directors as contained in the amended articles, was given in evidence by the defendant. It was admitted that one mile or more of said road was located in Vermont, running so as to connect with said Troy and Rutland in this state, at both ends, of so much as was located in Vermont. The Troy and Rutland Railroad Company had constructed only about one-half a mile of their road south of Eagle Bridge to the point of intersection with the Troy and Boston road, which was the starting point under the amended articles. This action was commenced on the 24th day of June, 1852. The parties rested, and the defendant asked for a non-suit, on the same grounds before stated, and also on the ground stated in the objections to the papers produced in evidence. And that there was no proof that the consideration of the defendant's contract was fulfilled by the plaintiffs ; that on the contrary there was an entire failure of consideration. The motion was denied, and the defendant excepted. The defendant asked the court to submit to the jury, under a proper charge, the following questions severally ; as to whether the subscriptions to the original articles were made in good faith ; also whether stock to the amount of 1000 dollars per mile was actually and in good faith subscribed, prior to the filing of such articles ; also whether the ten per cent required by the statute to be paid in cash to the directors before such filing, was actually paid in good faith, as required by the statute. The court declined so to do, and the defendant's counsel excepted. The court then di-

rected a verdict in favor of the plaintiffs for $543.53, subject to the opinion of the supreme court at a general term. To which the defendant's counsel excepted. And the jury found a verdict pursuant to such direction, in favor of the plaintiffs, for $543.53.

*L. J. Howe,* for the plaintiff.

*J. Gibson,* for the defendants.

*By the Court,* HAND, P. J. The plaintiffs cannot rely upon the admission in the answer, as proof that the defendant executed the instrument set forth in the complaint. The defendant, in his second answer, in which he sets up his first special ground of defense, admits that he executed those instruments. But all the material allegations of the complaint had before been denied by the first answer ; and this admission was a mere confession, for the purpose of avoidance ; and the plaintiffs cannot dismember a special plea, and take this confession as a general admission in the suit. Certainly not, when he takes issue upon the plea. Were this so, every good special plea to the whole declaration, notwithstanding the general issue, would be an admission of the declaration generally, and would be a waiver of the general issue, and change the *onus* on to the defendant. (*Harrington* v. *Macmorris,* 5 *Taunt.* 228. *Robins* v. *Maidstone,* 4 *Q. B. Rep.* 811. *Firmin* v. *Crucifix,* 5 *Car. & Payne,* 97. *Montgomery* v. *Richardson, Id.* 247.) The plaintiffs, therefore, were under the necessity of proving that the defendant signed the subscription upon which they had declared.

He acknowledged the execution of the articles of association, and "the papers thereto annexed," which included the subscription ; that, if not in fact part of the articles, being then prefixed and must have been intended, as no papers were literally " annexed." This acknowledgment authorized the originals to be given in evidence. (*Laws of* 1833, *ch.* 271, § 9.) The copy of the articles certified by the secretary of state, were also admissible in evidence. (1 *R. S.* 166, § 4. *Laws of* 1848, *ch.* 140, § 3. *Laws of* 1850, *ch.* 140, § 3. *Peck* v. *Farrington,* 9 *Wend.*

44. *Haddock* v. *Kelsey*, 3 *Barb.* 100.) And the repeal of the act of 1848, by § 50 of the act of 1850, would not destroy the vitality as evidence, of a certificate given in 1849.

But if the subscription was not properly filed in the office of the secretary of state, such certificate could not make the copy primary evidence. (*Bouchaud* v. *Dias*, 3 *Denio*, 238. *Dick* v. *Balch*, 8 *Peter's R.* 33; 2 *Cowen & Hill's Notes*, 1244. *Jackson* v. *Leggett*, 7 *Wend.* 377.) And there is no law requiring or authorizing a subscription to the stock of a railroad corporation, distinct from the articles of association, to be filed with the secretary of state. The articles and affidavit indorsed thereon, or annexed thereto, are to be filed.

But I am inclined to think, the subscription, so called, or first paper, was sufficiently proved, in this case. The caption of the first instrument reads thus : " articles of association ;" and that, and what are claimed to be the articles, bear the same date, were signed by the same persons, and at the same time ; were acknowledged at one time ; have but one certificate of acknowledgment ; were filed together ; and, as appears by the certificate of acknowledgment, were then attached together. And the second one recites that " the undersigned, being subscribers to the stock," &c. They may be considered as one instrument, and were, no doubt, intended to constitute the articles of association. And if that were not so, as the second one was properly proved, and was affixed to the other, and therein the defendant stated that he was a subscriber ; as there was no other subscription paper proved, the last paper naturally refers to the first, and admits it to be genuine.

The execution of these papers made the defendant liable to pay the amount subscribed by him. I had occasion, this term, to examine this subject in the case of the *Fort Edward and Fort Miller Plank Road Co.* v. *Payne ;(a)* and as here was an express agreement to pay for the stock, the defendant was bound to do so, notwithstanding the corporation had also the power of declaring his stock forfeited for non-payment of calls.

The defendant denies that he paid ten per cent when he sub-

(a) Ante, p. 567.

scribed, or at any other time; and the plaintiffs claim the whole sum. Perhaps he could not have been considered as a subscriber to the stock, under the railroad act of 1850, (*Laws of 1850, ch.* 140, § 4,) which declares that no subscription shall be received or taken without the subscriber pays ten per cent. (*Union Turn. Co.* v. *Jenkins,* 1 *Caines' Ca. in Err.* 86.) The laws of 1848 required ten *per cent* on the amount of stock subscribed to be paid in. But I do not think payment of that sum, by each subscriber was by that statute a condition precedent. Ten *per cent* upon the total amount subscribed was paid; and the fact that Mr. Stevenson advanced the money for a large portion of the subscribers made no difference.

If the length of the road was misstated, as there is no pretense of fraud, or even of negligence, that is not a defense; and besides, the defendant himself joined in the statement.

The objection that stockholders were admitted to testify, I suppose to be answered by the case of *Montgomery Co. Bank* v. *Marsh,* decided in the court of appeals in December, 1852.

The defendant also insists, that, admitting he became bound by his subscription, he has been absolved from that obligation, by the alteration in the articles of association, and by the sale and transfer of the road. As I understand the evidence, the whole line of the railroad of the plaintiffs has passed out of the charge of the corporation. But if this was unauthorized, the corporation was not thereby *ipso facto* dissolved. (*See Brinck-erhoff* v. *Brown,* 7 *John. Ch.* 217; *Att'y Gen.* v. *Bank of Niagara, Hopk.* 354; *Ward* v. *Sea Ins. Co.,* 7 *Paige,* 294; *Mickles* v. *Rochester City Bank,* 11 *Id.* 118; *Angel & Ames on Corp. ch.* 22.) It has been decided in England, that one railroad corporation cannot lease its road, or give up the management of its line, to another, nor delegate the powers conferred by statute, without the authority of the legislature. Those acts are *ultra vires.* (*Beman* v. *Rufford,* 1 *Sim. N. S.* 550; *S. C.* 6 *Eng. Law and Eq. R.* 106. *Great N. Cos. R. Co.* v. *Eastern Cos. R. Co.,* 9 *Hare,* 313; *Winch* v. *Birkenhead, &c. Railway Co.,* 13 *Eng. Law and Eq. R.* 506; *Shrewsbury and Chester R. Co.* v. *Shrewsbury and Bir. R. Co.,* 1 *Sim. N. S.*

110. *MacGregor* v. *Official Manager of Deal and Dover Railway Co.*, 16 *Eng. Law and Eq. R.* 180.) Not even with the assent of all the shareholders. (*East Anglian Railway Co.* v. *Eastern Counties Railway Co.*, 11 *C. B.* 775.) Though this may be done with the consent of parliament. (*W. London Railway Co.* v. *London N. W. R. Co.*, 11 *C. B.* 254; *S. C. Id.* 327. *Lond. S. West R. Co.* v. *South Easterly R. Co.*, 8 *Exch. R.* 584. *Ware* v. *Grand Junc. Water Co.*, 2 *R. & Mylne*, 470.) But such a contract would not discharge the liability of a subscriber to pay for his stock. If the pretended grant, whether intended to be a sale or lease, is void; and it was so considered in *East Anglian Railway Co.* v. *Eastern Counties Railway Co.*, (*supra*;) it cannot have that effect. And so, if it is not void, even though it should be a breach of duty on the part of the directors, the stockholders have other remedies, and cannot withdraw from membership.

But the change of the articles of association in this case, presents a more difficult question. It is not claimed that this was not done pursuant to the provisions of the act which authorizes a railroad corporation, by agreement, to shorten its line of road, and change its termination, and reduce its capital; where the lines of two roads embrace the same line of location. (*Laws of* 1851, *ch.* 19.) Of course it was not illegal to do so, and the corporation is not, in consequence, liable to any forfeiture at the suit of the people.

But the defendant contends that it is not binding upon him. That by reducing the capital stock down to a little more than one fifth of the original amount, and throwing up nearly a moiety of the road, another and different enterprise is substituted for the one in which he engaged.

A mere neglect to make the whole of a road specified in the articles of association, even without a legislative sanction, does not discharge the liability of a subscriber to pay for his stock; unless the powers and existence of the corporation have ceased in consequence of such neglect. It has been supposed a railroad corporation can be compelled, on the application of an owner of land through which it was to pass, to complete its road. (*Reg-*

v. *York and North Midland Railway Co.*, 1 *Ell. & B.* 178. *Reg.* v. *Great Western Railway Co., Id.* 253. *Blackmore* v. *Glamorganshire Can. Nav.* 1 *My. & K.* 154. *Reg.* v. *Eastern Counties Railway Co.*, 10 *A. & E.* 531. *And see Ang. & Ames on Corp.* 649, 650, *and cases there cited ;* 3 *Paige,* 74, 75.) The cases in Ellis & Blackburn, however, were reversed in the exchequer chamber, the court holding that a statute declaring "it shall be lawful for the said company to make, maintain," &c. was enabling and not obligatory. (1 *Ell. & B.* 858, 874, *n.* 875. *And see Rex·v. Birmingham Can. Co.*, 2 *Bl. R.* 708.) By sect. 47 of the railroad act of 1850, if the road is not finished and put in operation in five years, "its corporate existence and powers shall cease." Probably this is the only condition or limitation as to time, so far as the public are concerned. But this case does not depend upon neglect or delay. The company does not contend that the amendment is not legal and valid; or that it was improperly made ; or that the new articles have not been acted upon; or that the corporation now has power to build the road farther than Eagle Bridge ; or raise the original amount of stock. By the act under which this company was first organized, the legislature could amend, annul, and repeal the charter. (*Laws of* 1848, *ch.* 140, § 45. *And see Const. art.* 8, § 1 ; 1 *R. S.* 600, § 8.) But it does not follow that stockholders are obliged to accept every amendment, however complete and fundamental. These acts have been considered in the nature of contracts. *Dartmouth College* v. *Woodward,* 4 *Wheat.* 637. *Ld. Eldon, in Blackmore* v. *Glamorganshire Can. Nav. supra ; Ang. & Ames on Corp.* 8, 27, 729, 730, 732, *and cases there cited.*) The legislature may repeal and also amend the charter of a railroad corporation ; but if the amendment go farther than matters of police and those duties that immediately affect the public, I think there is no compulsory power, and the corporation may decline to accept. Whether, and when, the charter may be declared forfeited by such non-acceptance, or non-compliance, are other questions. The corporators say we accept this charter, you reserving the power to amend it ; but they do not agree to accept and use it after an amendment, no matter how injurious

Troy and Rutland Railroad Company *v.* Kerr.

to their interests. A charter of a private corporation must not only be granted, but accepted; and the rule is the same as to an amendment. (*Ang. & Ames on Corp.* 67 *to* 70.) It would hardly be contended that under this reserved power, a corporation for the construction of a railway, could be compelled to carry on a brewery, by an amendment of its charter to that effect. After the charter has been accepted, courts may in some cases, as was attempted by Lord Campbell and his associates in the queen's bench, in the cases to which we have referred, compel the corporation to fulfill the purposes of its creation. And then too, as a general rule, the acts of the majority control, when confined to the ordinary transactions of the company, and con-sistent with the original objects of its formation. But every thing relating to the organization of a private corporation of the nature we are considering, as well as of copartnerships, is mere matter of individual contract; and the compact, which is to clothe its members with this artificial, corporate existence, must receive the voluntary assent of the whole. And as there can be no compulsion in the first instance, I do not see how there can be a claim upon the property of a member to aid a different enterprise, after a material change in the constitution of the company. Besides, in this case the alteration was voluntary on the part of the corporation. Having been made, did it cancel the obligation of a stockholder to pay calls? Admitting that an alteration may discharge that obligation, was this not one inci-dental to the undertaking, and to which the stockholder must be considered impliedly to assent; and if not, was it so mate-rial as to be a ground of defense?

The case is certainly not free from doubt. In the case of the *London and Brighton Railway Co.* v. *Wilson,* and *Same* v. *Fairclough,* (6 *Bing. N. C.* 135,) the court refused to let the defendant amend, and plead that the calls were made for other purposes than those warranted by the act of parliament; and that there had been deviations in the line of railway, and that the calls were made to carry on the railway after such deviations. That however was not an alteration of the constitution of the company, nor a deviation by legislative sanction. In another

case, by the subscribers' agreement, application was to be made to parliament for an act authorizing the construction of a railway from D. via M. to A., and it bound the subscribers to submit to such regulations as the legislature should impose. The company sought for, and obtained an act, by which it was authorized to terminate its road at M. and to purchase and work a canal to A. ; and the defendant was held liable for calls. (*Midland &c. Railway* Co. v. *Gordon*, 16 *Mees. & Wels.* 804.) And where a shareholder filed a bill to prevent a railway corporation from building a branch, alleging that the time limited for that purpose had expired, an injunction was denied. (*Ffooks* v. *London &c. R. Co.*, (19 *Eng. Law and Eq. R.* 7.) And it was said by the vice chancellor, that the general principle, that the majority cannot bind the minority in a joint stock company, as to an act not within the common contract, if it be an act to extend the liability of the whole body in a way not contemplated by the contract, as in borrowing money to extend the capital where the amount of the capital was limited by contract, had not been applied to corporate companies for a public undertaking, involving public interests and public duties under the sanction of parliament. And Lord Brougham said in *Ware* v. *Grand Junc. Water Co.*, (2 *Russ. & M.* 470,) " a corporation may apply to the crown for a new charter ; and the new charter, when accepted, binds the corporation and gives it new existence." In that case, a shareholder attempted to restrain the corporation from using its funds to procure an amendment. And it has been held here, that an amendment of a charter, authorizing the construction of branches, did not exonerate a subscriber to the stock from the payment of calls. (*Northern Railroad Co.* v. *Miller*, 10 *Barb.* 260. And see *Irving* v. *Turn. Co.*, 2 *Penn. R.* 466. *York &c. R. Co.* v. *Reg. supra. Ang. & Ames on Corp.* 67, 70, 459, 460.) And in *White* v. *Syracuse and Utica Railroad Co.*, (14 *Barb.* 559,) an injunction on the application of a shareholder, to restrain a corporation in this state, from paying a subscription to the capital stock of a railway corporation in Canada, made under a statute of this state authorizing such subscription, or a loan of credit on obtaining the consent of two-

Troy and Rutland Railroad Company v. Kerr.

thirds of the stockholders, was denied. And acquiescence may preclude the stockholder from making the objection. In *Graham* v. *Birkenhead &c. Junc. Railway Co.*, (12 *Beav.* 460,) an injunction to restrain the directors from applying the funds of the company in the completion of a part of their line with a view to the abandonment of the remainder, was denied, because the plaintiff had remained passive eighteen months. (*And see Ffooks* v. *London &c. R. Co., supra. Steigerberger* v. *Carr*, 3 *M. & G.* 191. *Tredwin* v. *Bourne*, 6 *M. & W.* 461.) And it was in proof in this case, that in the fall of 1851, the defendant said he would pay his subscription.

But on the other hand, there are many cases that seem to favor the defense. In *Lond. and Brighton R. Co.* v. *Wilson & Fairclough*, the statute, in terms, created a positive indebtedness. In *Ffooks* v. *London &c. Railway Co.*, some of the plaintiffs had acquiesced. And the lord chancellor, in *Graham* v. *Birkenhead &c. Railway Co.*, (*supra*,) stated the general doctrine, that parties who have subscribed their money for one purpose, are not to be told that the directors or a majority of the company, are of opinion, that it would be very advantageous to employ it for another. And again, " every proprietor when he takes shares," said Jervis, C. J., " has a right to expect that the conditions upon which the act was obtained will be performed; and it is no sufficient answer to a shareholder expecting his dividend, that the money has been expended upon an undertaking which at some remote period may be beneficial to the line." (11 *C. B.* 811.) And this doctrine sustained the defense of a subscriber, in an action at law for calls, in *Hartford and N. Haven Railroad Co.* v. *Croswell;* where the alteration had received the sanction of the legislature. (5 *Hill*, 383.) And has often been recognized and acted upon. (*Middlesex Turn. Co.* v. *Swann*, 10 *Mass. R.* 384. *Same* v. *Locke*, 8 *Id.* 268. *Ang. & Ames on Corp.* 483. *Livingston* v. *Lynch*, 4 *John. C.* 573. *Bagshaw* v. *Eastern U. R. Co.*, 2 *Man. & G.* 389. *S. C.*, 7 *Hare*, 114. *Mount* v. *Shrewsbury and R. Co.*, 13 *Beav.* 1. *Colman* v. *Eastern Co.'s R. Co.* 10 *Beav.* 1. *McGregor* v. *Official Manager of Deal &c. R. Co.*, 18 *Eng. Law and Eq. R.*,

980. *Cohen* v. *Wilkinson,* 12 *Beav.* 125. *Reg.* v *S. Wales R. Co.,* 14 *Q. B.* 902. *Stevens* v. *South Devon R. Co.,* 13 *Beav.* 48. *Const* v. *Harris,* 1 *T. & R.* 496. *Stevens* v. *Rutland and Burl. R. Co.,* 1 *Am. L. Reg.* 153. *McCullough* v. *Moss.* 5 *Denio,* 567. *Coll. on Part. by Perkins,* §§ 198, 9, *and notes.*) And in the case of the *Northern Railroad Co.* v. *Miller,* not a step had been taken towards the construction of branch roads. With all respect, I should probably have found it difficult to concur in the judgment in *White v. Syracuse and Utica Railroad Co.* One who had embarked his fortune in the construction of a railroad, perhaps to run past his own door, could hardly have supposed that, under the usual power of repeal and amendment reserved by the legislature, he could be forced to lend his money to, or become a member of, another railroad corporation chartered and doing business in a foreign country. We have one or two other similar enactments I believe, upon our statute books ; but the legislature seems to have given a more restricted construction to its powers ; and, in a recent act to authorize the consolidation of certain railroad corporations, inserted provisions enabling a dissenting stockholder to receive compensation for his stock, and withdraw. (*Laws of* 1853, *ch.* 76, § 6.) Perhaps in England, amendments of a charter are not a ground of defense at law, in an action against a shareholder for the price of his stock. But since the *Hartford and New Haven Railroad Co.* v. *Croswell,* here, it seems otherwise, and in such an action, he may show that there has been an essential change in the original plan and purpose of the association, without his consent or acquiescence. I have been inclined to the opinion that this had been shown in the present case ; but I understand my brethren think there was no such radical change of the plan and business of the corporation as exonerated the defendant, and that his subsequent promise is evidence of his acquiescence. Consequently there must be judgment for the plaintiff.

Judgment for plaintiff.

C. L. ALLEN, J., being a stockholder, took no part in the decision.

[SARATOGA GENERAL TERM, May 1, 1854. *Hand, Cady* and *James,* Justices.]