In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1853

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN SMITH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 CR 93—**Sarah Evans Barker,** *Judge.*

ARGUED APRIL 22, 2008—DECIDED SEPTEMBER 12, 2008

Before RIPPLE, EVANS and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Steven Smith was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The district court found that Mr. Smith qualified for an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA" or "Act"), and therefore imposed a sentence of 240 months' imprisonment. Mr. Smith now appeals his sentence, challenging whether, after the Supreme Court's

recent decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), a felony committed with a *mens rea* of recklessness may qualify as a prior violent felony conviction under the ACCA. For the reasons set forth in this opinion, we vacate the judgment of the district court and remand for further proceedings.

# I

## BACKGROUND

The Armed Career Criminal Act provides that any defendant convicted of violating 18 U.S.C. § 922(g), who also has three prior convictions for "a violent felony or a serious drug offense," shall be sentenced to not less than fifteen years' imprisonment. 18 U.S.C. § 924(e)(1). The Act defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

In April 2006, Steven Smith sold fourteen stolen firearms to an undercover agent. Mr. Smith ultimately was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

Prior to sentencing, the Government filed a memorandum requesting that Mr. Smith be sentenced as an armed career criminal under the ACCA. It identified three of Mr. Smith's prior convictions as violent felonies: (1) a 2001 conviction for intimidation, a Class D felony; (2) a 2005 conviction for criminal recklessness with a deadly weapon, a Class D felony, *see* Ind. Code § 35-42-2-2; and (3) a 2006 conviction for criminal recklessness, a Class D felony, *see id*.

At the sentencing hearing, Mr. Smith objected to the Government's characterization of his two criminal recklessness convictions as violent felonies under the ACCA. In his view, the offense of criminal recklessness did not require a *mens rea* sufficient to warrant its inclusion as a violent felony; he contended that a higher mental state is required to trigger the enhanced penalty mandated by the Act. He also argued that the Sixth Amendment and *United States v. Booker*, 543 U.S. 220 (2005), require a jury to determine whether prior convictions qualify as violent felonies under the ACCA.

The district court found both of these objections unpersuasive in light of controlling precedent. It therefore sentenced Mr. Smith to 240 months' imprisonment, a sentence in the middle of the suggested guidelines range for an armed career criminal. *See* 18 U.S.C. § 924(e); U.S.S.G. § 4B1.4(b)(3)(B). Mr. Smith timely appealed.

## II

## DISCUSSION

### A.

Mr. Smith first contends that "criminal recklessness," as defined by Indiana law, is not a violent felony and, accordingly, that he should not have been sentenced as an armed career criminal. Whether an Indiana conviction for criminal recklessness may be considered a violent felony under the ACCA is a question of law that we review de novo. *See United States v. Otero*, 495 F.3d 393, 400 (7th Cir. 2007).

We begin with the text of the Indiana statute. Indiana defines "criminal recklessness" as follows:

> A person who recklessly, knowingly, or intentionally performs:
>
>> (1) an act that creates a substantial risk of bodily injury to another person; or
>>
>> (2) hazing;[1]

---

[1] "Hazing" is further defined as

forcing or requiring another person:

> (1) with or without the consent of the other person; and
>
> (2) as a condition of association with a group or organization;

to perform an act that creates a substantial risk of bodily injury.

Ind. Code § 35-42-2-2(a).

commits criminal recklessness.[2]

Ind. Code § 35-42-2-2(b).

The parties agree that criminal recklessness, as defined by the Indiana Code, does not fall within the scope of 18 U.S.C. § 924(e)(2)(B)(i), which requires that the offense have "as an element the use, attempted use, or threatened use of physical force against the person of another." It also, of course, is not "burglary, arson, or extortion," and it does not involve the "use of explosives." *See* 18 U.S.C. § 924(e)(2)(B)(ii). Therefore, the question before us is whether criminal recklessness may be classified as a vio-

---

[2] Criminal recklessness, although generally a Class B misdemeanor, is:

> (1) a Class A misdemeanor if the conduct includes the use of a vehicle;
>
> (2) a Class D felony if:
>
>> (A) it is committed while armed with a deadly weapon; or
>>
>> (B) the person committed aggressive driving (as defined in IC 9-21-8-55) that results in serious bodily injury to another person; or
>
> (3) a Class C felony if:
>
>> (A) it is committed by shooting a firearm into an inhabited dwelling or other building or place where people are likely to gather; or
>>
>> (B) the person committed aggressive driving (as defined in IC 9-21-8-55) that results in the death of another person.

Ind. Code § 35-42-2-2(c).

lent felony under the so-called "residual clause" because it "otherwise involves conduct that presents a serious potential risk of physical injury." *Id*.

We previously have held that criminal recklessness does qualify as a crime of violence for purposes of sentencing under the ACCA, *see United States v. Newbern*, 479 F.3d 506, 509-11 (7th Cir. 2007); *United States v. Jackson*, 177 F.3d 628, 633 (7th Cir. 1999), because it presents a serious potential risk of physical injury to another. *See generally James v. United States*, 127 S. Ct. 1586 (2007) (discussing the degree of risk required for an offense to fall within the residual clause). Six days before oral argument in this case, however, the Supreme Court decided *Begay v. United States*, 128 S. Ct. 1581 (2008), which added an additional layer of analysis. We asked the parties to submit supplemental briefs analyzing how *Begay* affects this issue.

In *Begay*, the Supreme Court held that New Mexico's felony offense of driving under the influence ("DUI") could not be considered a violent felony under the residual clause of the ACCA. *Begay*, 128 S. Ct. at 1588. Although the Court assumed that driving under the influence involves conduct that "presents a serious risk of physical injury to another," *id*. at 1585, it nevertheless found that driving under the influence falls outside the scope of the residual clause because it "is simply too unlike the provision's listed examples for us to believe that Congress intended the provision to cover it." *Id*.

The Court reasoned that the listed offenses in § 924(e)(2)(B)(ii)—burglary, arson, extortion and the use of explosives—"illustrate the kinds of crimes that fall

within the statute's scope." *Id.* at 1584-85. Examining the listed crimes, the Court concluded that, in addition to posing a serious risk of injury to others, the commonality shared by the listed crimes was that each involved "purposeful, violent, and aggressive conduct." *Id*. at 1586 (internal quotation marks and citations omitted).[3] By contrast, it noted, New Mexico's DUI statute, like the typical statute that forbids driving under the influence, was a strict liability offense; "the conduct for which the drunk driver is convicted (driving under the influence) need not be *purposeful or deliberate*." *Id.* at 1587 (emphasis added).

The Court went on to note that the ACCA, as suggested by its title, was intended to target "the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun." *Id*. "In this

---

[3] Specifically, the Court noted that each of the enumerated crimes involved a certain degree of intent: "'burglary' is an unlawful or unprivileged entry into a building or other structure with 'intent to commit a crime'"; "'arson' is causing a fire or explosion with 'the purpose of,' *e.g.*, 'destroying a building . . . of another' or 'damaging any property . . . to collect insurance'"; "extortion is 'purposely' obtaining property of another through threat of, *e.g.,* inflicting 'bodily injury'"; and "the word 'use'" in the explosives enumeration "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Begay*, 128 S. Ct. at 1586 (internal citations omitted). "Crimes committed in such a purposeful, violent, and aggressive manner," the Court explained, "are potentially more dangerous when firearms are involved." *Id*. (internal quotation marks and citation omitted).

respect," it explained, "crimes involving *intentional* or *purposeful* conduct," such as the enumerated crimes, are substantially different from crimes such as driving under the influence. *Id*. (emphasis added). "In both instances, the offender's prior crimes reveal a degree of callousness towards risk, but in the former instance they also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Id*. It concluded: "We have no reason to believe that Congress intended a 15-year mandatory prison term where that increased likelihood does not exist." *Id*.

After *Begay*, then, a finding that the offense poses a serious risk of physical injury to another is a *necessary*, but not *sufficient*, condition for the offense to be included within the scope of ACCA's residual clause. The Government must also show that the predicate offense "typically involve[s] purposeful, violent, and aggressive conduct." *Id*. at 1586 (quotation marks omitted). Defendants with prior convictions for offenses that do not involve "purposeful or deliberate" conduct are not the type of defendants that Congress intended to include within its definition of an armed career criminal. *Id*. at 1587; *see also United States v. Spells*, No. 07-1185, 2008 WL 3177284, at *8 (7th Cir. Aug. 8, 2008) (noting that the non-purposeful nature of the DUI offense was the "primary distinction" relied upon by the Supreme Court in *Begay*).

Mr. Smith contends that, under the standard elucidated in *Begay,* offenses that require only negligent or reckless conduct cannot be considered violent felonies within the meaning of section 924(e)(2)(B)(ii). In his view, crimes

with a *mens rea* of recklessness are, by definition, not "purposeful," and criminals convicted of an offense involving mere recklessness are not the types of individuals who are increasingly likely to "deliberately point the gun and pull the trigger." *Begay*, 128 S. Ct. at 1587. At least one other circuit has agreed with this interpretation. *See United States v. Gray*, No. 07-3636, 2008 WL 2853470, at *3-4 (2d Cir. July 25, 2008) (noting that the Supreme Court in *Begay* placed "a strong emphasis on intentional—purposeful—conduct as a prerequisite," and holding that "reckless endangerment" is not a crime of violence because the statute "on its face does not criminalize purposeful or deliberate conduct").

In determining whether the Court in *Begay* meant to bar crimes with a *mens rea* of recklessness from inclusion within the ACCA's residual clause, it is helpful to look to the examples that it provided of crimes which, though certainly dangerous, "are not typically committed by those whom one normally labels 'armed career criminals.'" *Id*. at 1587. Most relevant for our purposes, the Court referenced the federal offense of reckless tampering with consumer products, 18 U.S.C. § 1365(a). Despite its innocuous-sounding title, this statute provides: "Whoever, with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, tampers with any consumer product" shall be guilty of a felony. *Id*. Although the commission of this offense is unquestionably dangerous, the Court concluded that it was "far removed" from the "deliberate kind of behavior associated with violent criminal use of

firearms." *Id*. Similarly, in concluding that driving under the influence was not a violent felony under the Act, the Court emphasized that "drunk driving is a crime of negligence or *recklessness*, rather than violence or aggression." *Id*. at 1587 (emphasis added) (quoting *United States v. Begay*, 470 F.3d 964, 980 (10th Cir. 2006) (McConnell, J., dissenting in part)).

It is also worth noting that the Court concluded its opinion by stating:

> [W]e hold only that, for purposes of the particular statutory provision before us, a prior record of DUI, a strict liability crime, differs from a prior record of violent and aggressive crimes committed *intentionally* such as arson, burglary, extortion, or crimes involving the use of explosives. The latter are associated with a likelihood of future violent, aggressive, and purposeful "armed career criminal" behavior in a way that the former are not.

*Id*. at 1588 (emphasis added). Again, the Court emphasized that the enumerated crimes are "intentional," and therefore of greater concern than crimes without that requisite intent.

We must remember that the enhanced prison term under the ACCA is imposed *in addition* to prison time that already has been served for the predicate felony convictions. When it enacted the ACCA, Congress was attempting to separate out those offenders whose criminal history evidenced a high risk for recidivism and future violence; these career offenders, it concluded, exhibited a special need for an increased sentence in order

to deter future violent crimes. *See id.* at 1587; *Taylor v. United States*, 495 U.S. 575, 587-88 (1990). In the Court's view, Congress intended the Act to encompass those offenders convicted of crimes involving "intentional or purposeful conduct," rather than those offenders who simply behave recklessly. *Begay*, 128 S. Ct. at 1587.

We must conclude that, after *Begay*, the residual clause of the ACCA should be interpreted to encompass only "purposeful" crimes. Therefore, those crimes with a *mens rea* of negligence or recklessness do not trigger the enhanced penalties mandated by the ACCA. Accordingly, we agree with the Second Circuit that crimes requiring only a *mens rea* of recklessness cannot be considered violent felonies under the residual clause of the ACCA.

With this in mind, we next must examine the criminal recklessness statute under which Mr. Smith twice was convicted. Normally, when deciding whether an offense is a violent felony, our inquiry begins and ends with the elements of the offense. *Taylor*, 495 U.S. at 602 (explaining the "categorical approach"); *see also Begay*, 128 S. Ct. at 1584; *James*, 127 S. Ct. at 1594; *Newbern*, 479 F.3d at 508. In this case, however, a review of the elements of the statute alone is inconclusive. *See* Ind. Code § 35-42-2-2(b). The language of Indiana's criminal recklessness statute partially mirrors that of the ACCA—it requires that the person perform an act that "creates a substantial risk of bodily injury to another person." Ind. Code § 35-42-2-2(b)(1). The criminal recklessness statute departs from the language of the ACCA in one important respect, however; in addition to encompassing those offenders

who *intentionally* perform an act that creates a substantial risk of bodily injury to another person, the statute also expressly encompasses those individuals who do so *recklessly*.[4] The Indiana statute therefore criminalizes *non-purposeful* conduct as well as *purposeful* conduct.

Under the categorical approach, we consider the offense generically; we may not inquire into the specific conduct of a particular offender. *Begay*, 128 S. Ct. at 1584; *James*, 127 S. Ct. at 1594. When a statute encompasses multiple categories of offense conduct—some of which would constitute a violent felony and some of which would not—we may expand our inquiry into a *limited* range of additional material in order to determine whether the jury actually *convicted* the defendant of (or, in the case of a guilty plea, the defendant expressly admitted to) violating a portion of the statute that constitutes a violent felony. *Shepard v. United States*, 544 U.S. 13, 16-17 (2005); *Taylor*, 495 U.S. at 602; *Spells*, 2008 WL 3177284, at *5; *United States v. Matthews*, 453 F.3d 830, 833-34 (7th Cir. 2006). These additional materials are limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and

---

[4] *Cf.* 18 U.S.C. § 1365(a) ("Whoever, with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, tampers with any consumer product that affects interstate or foreign commerce" is guilty of the offense of reckless tampering of consumer products.) (cited in *Begay* as an example of crimes clearly not contemplated by the ACCA as violent felonies).

defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. Such an examination, however, is "*only* to determine which part of the statute the defendant violated." *United States v. Howell*, 531 F.3d 621, 623 (8th Cir. 2008); *see also Matthews*, 453 F.3d at 834. This rule is not meant to circumvent the categorical approach by allowing courts to determine whether the actual conduct of the individual defendant constituted a purposeful, violent and aggressive act. *See Shepard*, 544 U.S. at 25 (discussing the problems inherent in judicial fact-finding, particularly after *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and noting that looking further into the facts surrounding a prior conviction likely would violate the standard set forth in *Apprendi*); *Matthews*, 453 F.3d at 834 n.8 (discussing *Shepard*, and noting that "this limitation preserves the categorical approach of *Taylor* and ensures that a defendant was 'necessarily' convicted of a generic burglary").

As likely will be true in many instances of convictions under a statute that contemplates reckless behavior, the juries that convicted Mr. Smith of criminal recklessness were not asked to determine whether he acted knowingly or intentionally; Mr. Smith also did not admit to acting with that intent. Therefore, under the categorical approach, we cannot look to the facts of his particular convictions to determine for ourselves whether his conduct was knowing or intentional, on the one hand, or merely reckless on the other. Accordingly, we conclude that, under the Supreme Court's reasoning in *Begay*, Mr. Smith's criminal recklessness convictions cannot serve as predicate violent felonies under the ACCA.

Without including his two convictions for criminal reklessness, Mr. Smith does not have the three qualifying convictions required for an enhanced sentence under the ACCA. Therefore, we must vacate the judgment of the district court and remand for resentencing in accordance with this opinion.

## B.

Mr. Smith also contends that the Supreme Court should overrule *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and hold that the Sixth Amendment prohibits a district court from making findings of fact regarding prior convictions under the ACCA. As Mr. Smith correctly recognizes, however, we are bound by that precedent. *See United States v. Jordan*, 485 F.3d 982, 984 (7th Cir. 2007).

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment of the district court and remand for resentencing.

VACATED and REMANDED