NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0077n.06
Filed: January 30, 2009

No. 06-6545

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

        v.

MICHAEL JOHNSON,

    Defendant-Appellant.

On Appeal from the United States District Court for the Eastern District of Tennessee at Chattanooga

_____/

**Before:**     **GUY, CLAY, and COOK, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**    Defendant Michael Johnson was convicted by a jury of: (1) conspiracy to distribute and possess with intent to distribute 5 grams or more of cocaine base (21 U.S.C. § 846 and § 841(a)(1)); (2) being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)); (3) possession with intent to distribute cocaine base (21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2); and (4) possession of a firearm in furtherance of a drug trafficking offense (18 U.S.C. § 924(c)(1)(A)(i) and § 2). The district court sentenced defendant to a total of 360 months of imprisonment, to be followed by a four-year term of supervised release.

Defendant, through counsel, appeals from the denial of his motion for a new trial based on the jury's exposure to extra-judicial matters during deliberations. Raising other

claims *pro se*, defendant challenges the sufficiency of the evidence to support the conspiracy conviction, the determination that he was a career offender based on a prior state conviction for reckless endangerment, and the refusal to reduce his sentence to account for the 100:1 disparity for offenses involving crack and powder cocaine.[1] For the reasons that follow, we affirm defendant's convictions, vacate his sentence, and remand for resentencing consistent with the recent decisions in *Begay v. United States*, 128 S. Ct. 1581 (2008), and *Kimbrough v. United States*, 128 S. Ct. 558 (2007).

## I.

On April 7, 2004, police executed a search warrant at 3011 North Cumberland Avenue in Chattanooga, Tennessee, and arrested defendant and Akil Lee. Making forced entry through the front door, police saw Lee and at least one other person run out the back door. Lee was apprehended outside, a small amount of powder cocaine was seized near him, and $190 was found in his pocket. Defendant was seen ducking into a bedroom. Officers followed, heard a thud, and caught up with defendant in the bathroom, where defendant held the officers away from the already flushing toilet. One officer testified that he could see "crumbs" of what appeared to be "easily an ounce" of crack cocaine, although no drugs were recovered. Defendant had $230 in cash in his pocket, and no drugs were found on his person.

Once defendant was secured, officers backtracked and discovered a loaded .38 caliber Rossi revolver lying in a box with trash located along the route defendant had taken to the

---

[1]Defendant also argued that the government denied him equal protection by refusing to provide him with transcripts from his trial to use in preparation of this appeal. We will not entertain this claim where there is no factual basis offered to support it, the defendant is represented by appointed counsel, and trial transcripts are part of the record.

bathroom. In a further search of the premises, officers also found a set of digital scales on top of a speaker in the living room, .9 grams of crack cocaine on the living room floor, and a bag containing 110 white pills. Lee initially claimed that he no longer lived there, but that defendant and a cousin named Shaun Robinson did. However, a letter addressed to Lee was found in the house, and Lee's driver's license—renewed that same day—listed the 3011 North Cumberland address as his residence. It was stipulated at trial that this was not defendant's permanent residence.

After initial denials from defendant, Lee was heard urging defendant to "take his charges" and admit responsibility for the firearm and the crack cocaine. Lee said he would admit that the pills and powder cocaine were his. Later, defendant did admit to possessing the firearm and the .9 grams of crack cocaine found in the living room. An officer testified that one gram of crack cocaine would represent a distribution quantity, explaining that a single rock of crack usually weighed approximately one tenth of a gram and was worth about $20. As a result, the .9 grams of crack cocaine was estimated to be worth approximately $200.

Separate four-count indictments were returned against defendant and Lee. Lee cooperated, pleaded guilty to one count, and testified for the government at defendant's trial. Lee specifically testified that he had been friends with defendant for 11 or 12 years, and that he had sold crack cocaine to the defendant once or twice a week from October 2003 until their arrest on April 7, 2004. Lee estimated that he sold defendant a total of 4.5 ounces of crack cocaine, and testified that he sometimes saw defendant resell the crack cocaine to

others. Lee also said he had seen the defendant with a gun when he was reselling the crack cocaine.

Lee testified that defendant came over with his clothes and other belongings on the day of their arrest and said he had a fight with his girlfriend. Lee told defendant he could stay with him, and then Lee went to get a new driver's license. Lee testified that he sold defendant "a quarter," or seven grams of crack cocaine, that day, and sold someone else 1.2 grams of powder cocaine. Later, Lee's cousin spotted the police van, alerted everyone, and they ran out the back door.

Timothy Henderson, defendant's cell mate, testified that defendant said that he took clothes, a firearm, and crack cocaine to Lee's house after a fight with his girlfriend. Defendant told Henderson that the gun was his and that he never left home without it. Henderson also reported that defendant said he flushed two ounces of crack cocaine down the toilet before his arrest. This was the only reference to a two-ounce quantity of cocaine, which is equivalent to 56.67 grams.

The defense offered testimony from fingerprint examiner Robert Rittenour, who stated that the only usable fingerprint on the firearm belonged to an ATF agent. There was also evidence that a "firearm trace" did not identify defendant or Lee as its purchaser. Next, defendant's probation officer testified that defendant was living with his girlfriend and her mother, and that defendant was receiving $400 per month in social security disability benefits. Finally, defendant's girlfriend's mother and sister testified that defendant was living with them at the time of his arrest. The sister, Chiemeka Jones, also testified that she

never saw defendant with a gun.

Trial commenced on December 18, 2005, and the jury was charged and deliberated for several hours on December 19, 2005. When the court clerk brought the trial exhibits to the jury room the next morning, she saw a clear plastic bag containing white powder on the table in the jury room. One juror told her that it contained baking powder. The district judge was alerted, counsel was consulted, and the juror who brought it in was questioned. After consultation with counsel, the district court denied defendant's motion for a new trial and instructed the jury that it must make its findings based only on the evidence admitted during trial. Deliberations continued, and the jury found defendant guilty on all counts. Although the conspiracy charged was alleged to have involved more than 50 grams of crack cocaine, the jury specifically found that the conspiracy involved more than 5 but less than 50 grams of crack cocaine. Defendant filed a renewed motion for judgment of acquittal and/or for a new trial, which was denied in a written order entered February 7, 2006.

On December 6, 2006, the district court sentenced defendant to a total of 360 months' imprisonment—including concurrent terms of 300 months, 120 months, and 240 months on counts 1-3, respectively, to be followed by a consecutive 60-month term on count 4. Defendant raised numerous objections, both *pro se* and through counsel, two of which are at issue in this appeal. In calculating the guidelines range for the three grouped offenses, the presentence report held defendant accountable for at least 35 and less than 50 grams of crack cocaine, which corresponded to an offense level of 30. Defendant's criminal history score was 21, well within Category VI. The district court determined, however, that two of

defendant's prior state convictions—robbery and reckless endangerment—qualified him as a career offender for purposes of USSG § 4B1.1, and resulted in an enhanced guidelines range of 360 months to life under USSG § 4B1.1(c). This appeal followed.

## II.

### A.    New Trial

Alerted to the presence of the bag of white powder, the district court sought guidance from counsel. The government requested that the juror who brought it in be questioned separately, and defense counsel moved for a mistrial. The district court conducted a *voir dire*, taking care to instruct the juror not to convey any information about the jury's deliberations, confirming that the bag contained baking powder, and asking why it was brought into the jury room. In response, the juror explained:

> THE JUROR: Yes, sir. We got hung up yesterday. Part of it was on– Half of them didn't know what 2 ounces was. I do a lot of my own gun loading, and I have scales for loading my own bullets. So they told me if I could show them what 2 ounces was—because nobody knowed. So that's what I done. I was up to 11:00 last night—which my wife's already run me off—weighing 2 ounces of baking powder, just to show them what 2 ounces looked like. And that was the whole deal.

The juror also confirmed that he had shown the other jurors what two ounces of baking powder looked like.

Outside the presence of the jury, the district judge and counsel agreed that Henderson's testimony included the only mention of a 2-ounce quantity of drugs at trial. After an opportunity to research the issue, and with the benefit of argument from counsel, the district court found that defendant had not demonstrated prejudice from the juror's

improper injection of this demonstrative aid into the deliberations. The district court emphasized that the government had not alleged a 2-ounce quantity in the indictment, and explained that "the most logical reason that the jury would have wanted to conduct their own experiment with the 2 ounces was to test the testimony of one of the witnesses . . . [whose] testimony did not go directly to an element of the offense at all." In other words, this was probably an effort to test the credibility of Henderson and did not pertain to an element of either of the drug offenses.

Denying defendant's motion for a mistrial, the district court nonetheless agreed that it was improper for the jury to consider it and instructed the jury accordingly. Specifically, with the approval of counsel, the jury was instructed in pertinent part as follows:

> It has come to the Court's attention that this morning the jury discussed and had available to it a plastic bag containing a white powder. This was not introduced as evidence during the trial by the parties. I remind you that you are to render your verdict based solely upon the evidence that was presented to you during the trial. The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations of the parties. Nothing else is evidence. You should make your decision based only on the evidence, as I have defined it here, and nothing else. Therefore you must disregard any discussions you had this morning regarding the plastic bag containing the powder and its contents. However, you may, and should, use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Deliberations resumed, and the jury returned its verdicts later that day. As previously mentioned, the jury found that the conspiracy involved more than 5 grams but less than 50 grams of crack cocaine. In denying the renewed motion for new trial, the district court found

that defendant was not prejudiced by the jury's improper use and/or consideration of extrinsic evidence, and that there was no reason to believe the jurors did not heed the curative instructions or base their verdicts solely on the evidence adduced at trial.

Under Fed. R. Crim. P. 33, a district court may, upon a defendant's motion, vacate a judgment and grant a new trial "if the interest of justice so requires." We review a district court's decision whether to grant a new trial on the grounds of juror misconduct for abuse of discretion. *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008). Here, the district court promptly investigated the circumstances and determined that the juror had improperly introduced extrinsic evidence into the jury's deliberations. *See id*. (citing *United States v. Lloyd*, 462 F.3d 510, 518 (6th Cir. 2006)). While the jury's verdict must be based on evidence admitted at trial, not from outside sources, the defendant "must do more than raise a 'serious suspicion' in order to demonstrate that he is entitled to a new trial." *Id*. at 362. As the district court recognized, the burden is on the defendant to demonstrate that juror misconduct prejudiced his defense, and prejudice will not be presumed. *Id.* at 361; *United States v. Branham*, 97 F.3d 835, 855 (6th Cir. 1996); *United States v. Gillespie*, 61 F.3d 457, 460 (6th Cir. 1995).

In the district court's estimation, the jury's investigation into the 2-ounce quantity was related to the weighing of Henderson's testimony and did not concern an element of the charges. The danger that the jury might consider evidence that had not been admitted at trial was ameliorated by the district court's cautionary instructions, which advised the jurors that their verdict must be based solely on the evidence admitted during trial and that their

discussions concerning the bag of powder must be disregarded in reaching their verdict. It is true that the charges against defendant involved only crack cocaine, not powder cocaine, but defendant cannot show that this prejudiced his defense where, in fact, the jury found that the charged quantity had not been proved and that the conspiracy involved a lesser quantity of crack cocaine. The district court did not abuse its discretion in denying defendant's motion for new trial.[2]

## B.      Sufficiency of Evidence

This court reviews *de novo* a district court's denial of a motion for judgment of acquittal challenging the sufficiency of the evidence. *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996). The relevant question in reviewing the sufficiency of the evidence on direct appeal is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making this determination, "we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994).

Arguing *pro se*, defendant reasserts the contention that the evidence established, at most, a buyer-seller relationship that was insufficient to establish the existence of the conspiracy. Proof of a formal agreement is not necessary, however, and a defendant's

---

[2]Since 56.67 grams equals 2 ounces, the verdict indicates that the jury was not persuaded that the conspiracy involved either the 2-ounce quantity that Henderson testified about or the 4.5-ounce aggregate that Lee estimated he had sold to defendant.

knowledge of and participation in a conspiracy may be inferred from circumstantial evidence. *United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997). Repeated purchases for further distribution provide evidence that there was more than a buyer-seller relationship, and the quantity of drugs involved may also support an inference that there was a conspiracy. *United States v. Martinez*, 430 F.3d 317, 332-33 (6th Cir. 2005).

Here, Lee testified that defendant purchased crack cocaine once or twice per week over a six-month period for further distribution by defendant. Although the jury did not accept Lee's testimony that he sold defendant a total of 4.5 ounces of crack cocaine (equal to more than 125 grams), the jury found the conspiracy between defendant and Lee involved more than 5 but less than 50 grams of crack cocaine. As mentioned earlier, there was evidence that a single gram of crack cocaine, which is a little more than the quantity seized at the time of defendant's arrest, represented a distribution quantity worth approximately $200. Lee also testified that he sold defendant six or seven grams of crack cocaine on the day of their arrest. After reviewing the trial testimony in this case, we find that the evidence was sufficient to lead a rational trier of fact to conclude that the conspiracy existed and that defendant was a knowing participant. *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Accordingly, the district court did not err in denying defendant's motion for judgment of acquittal.

### III.

Sentences imposed post-*Booker* are reviewed for reasonableness, which encompasses both procedural and substantive reasonableness. *Gall v. United States*, 128 S. Ct. 586, 594

(2007); *United States v. Booker*, 543 U.S. 220, 261 (2005). A sentence may be procedurally unreasonable if, among other things, the district court improperly calculated the sentencing guidelines range, treated the guidelines as mandatory, or failed to consider relevant sentencing factors under 18 U.S.C. § 3553(a). *Gall*, 128 S. Ct. at 597. If procedurally sound, a challenge to the substantive reasonableness of a sentence is reviewed for abuse of discretion. *Id*. at 598. Defendant raises two issues with respect to his sentence—both of which were also asserted at the time of sentencing.

## A.     Career Offender

First, defendant argues that the district court improperly calculated his guidelines range based on an erroneous determination that his prior state conviction for reckless endangerment qualified him as a career offender for purposes of enhancement under USSG § 4B1.1(c). A defendant is a career offender if (1) he is at least 18 years old at the time the offense of conviction was committed, (2) the offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) he has at least two such prior felony convictions. USSG § 4B1.1(a). Johnson did not contest that he was at least 18 years old, that he was convicted of a controlled-substance offense in this case, or that his prior conviction for robbery qualified as a crime of violence. We review *de novo* the district court's conclusion that defendant's conviction for reckless endangerment under Tenn. Code Ann. § 39-13-103 constituted a "crime of violence." *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005).

A "crime of violence" is defined to mean

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)     is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

USSG § 4B1.2(a) (emphasis added). Under the "categorical approach" for determining whether a prior conviction constitutes a "violent felony" under the Armed Career Criminal Act (ACCA) or a "crime of violence" under § 4B1.2(a), we must look only to the fact of conviction and the statutory definition. If that inquiry is not determinative, further inquiry "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005); *see also United States v. Foreman*, 436 F.3d 638, 641 (6th Cir. 2006).

Although the presentence report, which is the only evidence in the record concerning this conviction, recounts the factual basis for the conviction, the district court properly focused on the statutory definition in concluding that the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2). That is, under Tennessee law, reckless endangerment is committed by one "who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." TENN. CODE ANN. § 39-13-103(a). The offense becomes a felony when "committed with a deadly weapon," which includes a motor vehicle. *Id*. at § 39-13-

103(b); *State v. Wilson*, 211 S.W.3d 714, 719 (Tenn. 2007). Indeed, as was noted at sentencing, this court has held that a Tennessee conviction for felony reckless endangerment constituted a "violent felony" under the ACCA because there is no scenario in which one could commit the offense without creating a "serious potential risk of physical injury to another." *See, e.g.*, *United States v. Bailey*, 264 F. App'x 480, 482 (6th Cir.), *cert. denied*, 128 S. Ct. 2949 (2008); *United States v. Rutledge*, 33 F.3d 671, 674 (6th Cir. 1994).

However, the Supreme Court's recent decision in *Begay v. United States*, 128 S. Ct. 1581, 1584-85 (2008), makes clear that the presence of a serious potential risk of physical injury alone is not sufficient to establish that the conviction is a "crime of violence" under the "otherwise" clause of USSG § 4B1.2(a)(2). *See United States v. Smith*, 544 F.3d 781, 784 (7th Cir. 2008) (interpreting *Begay* as clarifying that risk of physical injury is a *necessary*, but not *sufficient*, condition for offense to be included in the ACCA's "otherwise" clause). The Supreme Court reasoned that the presence of the listed examples—burglary, arson, extortion, or crimes involving the use of explosives—"indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.' § 924(e)(2)(B)(ii)." *Begay*, 128 S. Ct. at 1585. Offering further insight, the Court also explained that the crime of driving under the influence was different from the listed examples in that the latter typically involve purposeful, violent and aggressive conduct. *Id*. at 1586. In fact, the Second Circuit has since held that a reckless endangerment conviction under New York law was not a "crime of violence" because the statute did not criminalize purposeful or deliberate conduct. *United States v. Gray*, 535 F.3d 128, 132 (2d

Cir. 2008); *see also United States v. Herrick*, 545 F.3d 53, 58-60 (1st Cir. 2008) (holding that conviction under Wisconsin law for homicide by negligent operation of a motor vehicle did not constitute a "crime of violence" under USSG § 4B1.2(a)(2)).

Accordingly, we find that the district court's determination in this case that defendant's reckless endangerment conviction constituted a "crime of violence" should be revisited in light of the recent pronouncements in *Begay*.[3]

**B.      100:1 Ratio**

In the calculation of the guidelines range, defendant was held accountable for more than 35 and less than 50 grams of crack cocaine, which corresponded to a base offense level of 30 under USSG § 2D1.1(c)(5). Defendant argued at sentencing that the guidelines range was not fair because of the 100:1 disparity in treatment of crack and powder cocaine, and urged that the district court impose a lesser sentence in light of the purposes of sentencing and in consideration of the disparities in sentencing. 18 U.S.C. § 3553(a). In response, the government called attention to a recent decision by this court rejecting a claim that the 100:1 ratio was unreasonable *per se*. *United States v. Caver*, 470 F.3d 220, 249 (6th Cir. 2006).

The record indicates, however, that the district court actually rejected defendant's request on the belief that it was without authority to depart or vary from the guidelines on this basis. This is clear from the district court's express reliance on the Eighth Circuit's recently

---

[3]Although defendant argued that the district court's determination was also in error because it was made without reliance on *Shepard*-compliant records showing that the conviction was a felony, it seems likely that the state court records would show that the conviction was for *felony* reckless endangerment since the maximum sentence for a misdemeanor is 11 months and the minimum sentence for a felony is two years. On remand, the district court can determine whether the presentence report's findings have support in sources approved by *Shepard*. *See United States v. Jones*, 453 F.3d 777, 780-81 (6th Cir. 2006).

articulated—now twice reversed—view that "neither *Booker* nor § 3553(a) authorizes district courts to reject the 100:1 quantity ratio and use a different ratio in sentencing defendants for crack cocaine offenses." *United States v. Spears*, 469 F.3d 1166, 1176 (8th Cir. 2006), *vacated and remanded*, 128 S. Ct. 858 (2008), *and United States v. Spears (on remand)*, 533 F.3d 715 (8th Cir. 2008), *vacated and remanded sub nom. Spears v. United States*, __S. Ct. __, 2009 WL 129044 (Jan. 21, 2009). The Supreme Court held in *Kimbrough*, however, that "under *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only." *Kimbrough v. United States*, 128 S. Ct. 558, 560 (2007). The Court has even further clarified that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Spears*, 2009 WL 129044, at *3. We find, in light of *Kimbrough*, that it was procedurally unreasonable for the district judge to sentence defendant under the erroneous belief that he was without authority to consider the 100:1 disparity in treatment of offenses involving crack and powder cocaine.

Accordingly, we **AFFIRM** defendant's convictions, **VACATE** defendant's sentences, and **REMAND** for resentencing consistent with *Begay* and *Kimbrough*.