In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2464

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON E. CLINTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:08-cr-00096-JVB-APR-1—**Joseph Van Bokkelen**, *Judge.*

ARGUED DECEMBER 2, 2009—DECIDED JANUARY 15, 2010

Before BAUER, KANNE and TINDER, *Circuit Judges*.

BAUER, *Circuit Judge*. Jason Clinton appeals his con-
viction and sentence for unlawful possession of a
firearm by a previously convicted felon, in violation of
18 U.S.C. § 922(g)(1). Clinton claims that the district court
erred by admitting evidence of the handgun, and
by finding that his prior behavior leading to a convic-
tion for criminal recklessness under Indiana law was
a "crime of violence" for purposes of enhancing his
sentence to one hundred months under the United States

Sentencing Guidelines § 2K2.1(a)(4)(A). We have reviewed the district court's legal conclusions de novo and its findings of fact for clear error. Finding no error, we affirm.

## I. BACKGROUND

Jason Clinton traveled with his friend, Louis Matta, and his girlfriend to Brown County, Indiana, in June 2008, to pick up his son, who had been staying with Clinton's mother and stepfather. They stayed part of the weekend and drove to Gary early Monday morning. Later that morning, police received a dispatch from Brown County that Clinton was suspected of stealing his stepfather's handgun. Officer Orlich saw Clinton stopped at a red light, pulled him over, and with the assistance of two officers removed Clinton and his passenger Matta from the car and placed them in the back of separate squad cars. Clinton told Orlich, "You can search the car. You ain't gonna find nothin'." Matta also separately told the officers, "I think what you are looking for is in the trunk." The officers searched the trunk and found a black .44 magnum handgun in a brown leather holster.

A jury convicted Clinton of unlawful possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Clinton to one hundred months in prison. The district court might have sentenced Clinton to about half that time had it not found that Clinton's prior behavior leading to a 1996 conviction for criminal recklessness under Indiana

law was a "crime of violence" under the United States Sentencing Guidelines § 2K2.1(a)(4)(A)—Clinton had stabbed an unarmed man, two or three times with a paring knife he grabbed from his kitchen, after the man chased Clinton up the stairs in Clinton's home threatening to beat him. According to Clinton's plea colloquy at the time, the first stab was justified. But he admitted to stabbing his unarmed attacker "too many times."

## II. DISCUSSION

We need not discuss Clinton's and Matta's conflicting stories and other evidence presented at trial regarding who stole the gun, because Clinton does not contend that the evidence presented at trial was insufficient to sustain his conviction under Fed. R. Crim. P. 29. *See, e.g., United States v. Harris*, 394 F.3d 543, 559 (7th Cir. 2005) (finding that arguments not raised on appeal are waived). Rather, Clinton challenges only the district court's denial of his motion to suppress the gun from being entered into evidence at trial, and the district court's sentence enhancement.

### A. Motion to Suppress

In reviewing the district court's denial of Clinton's motion to suppress the gun, we review questions of law de novo and questions of fact for clear error. *See, e.g., United States v. Ford*, 333 F.3d 839, 843 (7th Cir. 2003). Under the clearly erroneous standard, we will not over-

turn the district court's factual findings unless we are left with a "definite and firm conviction" that the district court was mistaken. *United States v. Corral*, 324 F.3d 866, 870 (7th Cir. 2003).

The Fourth Amendment protects people from "unreasonable searches and seizures." Evidence may be inadmissible if obtained as a result of an unreasonable search. *Mapp v. Ohio,* 367 U.S. 643 (1961); *Weeks v. United States*, 232 U.S. 383 (1914); *see also Herring v. United States*, 129 S.Ct. 695, 700 (2009) ("The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies."). But here the police's search for the gun was reasonable, and thus the gun was admissible, for three independent reasons.

First, the police had probable cause to search the car. Police do not need a warrant to search vehicles, which "can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll v. United States*, 267 U.S. 132, 153 (1925). Rather, police may search "any area of the vehicle in which the evidence might be found" so long as there is probable cause to believe a vehicle contains evidence of criminal activity. *Arizona v. Gant*, 129 S.Ct. 1710, 1721 (2009). Probable cause existed here, because the totality of the circumstances indicated a "fair probability" that the stolen gun would be found in the car Clinton was driving. *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Indeed, Clinton's stepfather had just reported his gun stolen and had

identified Clinton as the probable suspect and the type of car Clinton was driving, Orlich found Clinton driving that type of car, Clinton turned his head when stopped at the red light to evade identification by police, and after pulling over Clinton the officers were told by Matta to look in the trunk.

Second, Clinton consented to the search. The government bears the burden of proving, by a preponderance of the evidence, that a person who consents to a search does so freely and voluntarily. *See, e.g., United States v. McGraw*, 571 F.3d 624, 628 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). Clinton argues that the consent he gave was involuntary. In support, he cites only (1) possibly conflicting testimony, which does not persuade us that the district court committed clear error in finding that Orlich read Clinton his *Miranda* rights before Clinton consented; and (2) that he gave consent only after he was faced with the officers' guns, physically removed from his car, placed on the ground, and handcuffed (as one would expect police to behave in apprehending a suspect thought to be carrying a weapon). Appellant's Br. at 10. But the government met its burden of proving the consent's voluntariness, because Clinton told the officers they should search the car, even before they asked for permission, and Clinton had been in the squad car only briefly, had been advised of his *Miranda* rights, is over thirty years old, and has had extensive experience with the criminal justice system. *See McGraw*, 571 F.3d at 628-30.

Third, the police would inevitably have discovered the gun during an inventory search of the vehicle. *See Nix v.*

*Williams*, 467 U.S. 431, 446 (1984) ("Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial."). Police who lawfully impound a vehicle may take an inventory search of its contents, because they are responsible for those contents while the car and its contents are in their custody. *Colorado v. Bertine*, 479 U.S. 367, 373 (1987). Here the officers' towing and inventorying of the car Clinton was driving was lawful, because they followed a standard police procedure after both Clinton and his passenger Matta were arrested on suspicion of stealing a firearm, leaving no one to drive the car. *United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006). That Clinton's girlfriend, the owner of the car, could have been called to take possession of the car, is irrelevant. *Id.* (finding that the Fourth Amendment does not "demand that police offer a motorist an alternative means of removing his vehicle that will avoid the need to tow it and conduct an inventory search") (citations omitted).

In sum, we find no error with the district court's admission of the gun into evidence. As Clinton raises no further challenge to his conviction, his conviction stands.

## B.  Sentence Enhancement

We proceed with Clinton's challenge to his sentence. At issue is whether the district court permissibly enhanced Clinton's sentence by finding his prior criminal recklessness, under Indiana law, to be a "crime of violence" as defined by the United States Sentencing Guidelines. This

is a question of law we decide de novo. *United States v. Woods*, 576 F.3d 400, 408 (7th Cir. 2009).

Criminal recklessness in Indiana is a crime of violence only if it is similar to burglary or arson in the sense of entailing conduct that is "purposeful, violent, and aggressive." *See* Sentencing Guidelines § 4B1.2(a)(2)*; United States v. Gear*, 577 F.3d 810, 812 (2009) (quoting *United States v. Begay*, 128 S.Ct. 1581, 1586 (2008)). As to the latter two elements requiring violence and aggressiveness, we can think of no action more violent and aggressive than unjustifiably stabbing someone with a knife. So our inquiry focuses on whether Clinton was convicted for conduct that was intentional. *United States v. Smith*, 544 F.3d 781, 784 (7th Cir. 2008) (citing *Begay*, 128 S.Ct. at 1587).

Indiana's criminal recklessness statute outlaws bodily-harm-risking acts performed "recklessly, knowingly, *or* intentionally." Indiana Code § 35-42-2-2(b)(1) (emphasis added). Only if Clinton was convicted for the "intentional" part of this "divisible" statute did he commit a crime of violence subjecting him to a sentence enhancement. *Begay*, 128 S.Ct. at 1586; *Gear*, 577 F.3d at 813; *Woods*, 576 F.3d at 405-06; *Smith*, 544 F.3d at 786; *see also Chambers v. United States*, 129 S.Ct. 687, 690-91 (2009); *United States v. Hart*, 578 F.3d 674, 680 (7th Cir. 2009). In determining which part of the statute Clinton violated, we look only to certain additional court materials, such as Clinton's plea colloquy, *Smith*, 544 F.3d at 786 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)), in which Clinton admitted to stabbing his victim "too many times."

*United States v. Clinton*, No. 2-08-CR-96 JVB, 2009 WL 1513143, at *3 (N.D. Ind. May 28, 2009).

Clinton violated the intentional part of the statute and thus he is subject to the sentencing enhancement. Indeed, Clinton is subject to the enhancement because he was convicted for intending both (1) the *act* of stabbing his victim an extra time (we do not consider the first stab, which may have been performed justifiably, because we cannot say whether it constituted part of his conviction); and (2) the act's *consequences*. *See Woods*, 576 F.3d at 410 (finding that where a statute codifies an act's consequences as an element of the offense, sentencing enhancement requires a finding that the defendant intended both the act and its consequences). *But cf. Gear*, 577 F.3d at 813 (requiring only recklessness with respect to consequences).

First, Clinton behaved intentionally when he performed the act of the extra stab. A review of the plea colloquy reveals that Clinton gripped, aimed, and extended the knife while exercising volition. *See also* Appellant's Br. at 16 ("Clinton's actions were intentional.").

Second, Clinton necessarily intended the extra stab's consequences, i.e., the resulting bodily injury. Indeed, we cannot conceive of a possible situation with circumstances like those revealed by Clinton's plea colloquy—where someone again stabs an unarmed, already stabbed, bleeding man—in which the stabber is not necessarily aware that bodily injury will result. Our determination of Clinton's awareness is unaffected by the fact that Clinton was high on cocaine. *See Schlatter v. State*, 891

N.E.2d 1139, 1142 (Ind. Ct. App. 2008) ("[V]oluntary intoxication is not a defense in Indiana . . . and may not be taken into consideration in determining the existence of a mental state that is an element of the offense.").

Nor do we credit Clinton's wavering, ambiguous statements at the plea colloquy that he was acting in self-defense. Specifically, he claimed that either he thought he was acting in self-defense or did not know whether the victim was going to kill him or cause him serious bodily harm, without regard to whether either of these two possible states of mind applied to either the first stab or the extra stab. *Clinton*, 2009 WL 1513143, at *3. Had Clinton actually been properly defending himself with the extra stab as well as the first one, he would have had a complete defense to his felony conviction, as the sentencing judge recognized. *Id.*; *see also Bryan v. State*, 450 N.E.2d 53, 64 (Ind. 1983) ("The right to self-defense passes when the danger passes."). But when a defendant maintains his innocence—e.g., by asserting a complete defense—the state of Indiana refuses to accept guilty pleas. *See, e.g., Rowe v. State*, 912 N.E.2d 441, 444 n.2 (Ind. Ct. App. 2009) (citing *North Carolina v. Alford*, 400 U.S. 25, 38 (1970)). So the sentencing judge who accepted Clinton's guilty plea must have disbelieved that Clinton was maintaining that he had been defending himself also with the extra stab. Indeed, Clinton admitted to stabbing his victim "too many times," Clinton's testimony regarding self-defense was wavering and ambiguous, and the sentencing judge had ample opportunity to assess Clinton's demeanor—a luxury we lack when reviewing the transcript. So we find no clear error in the

sentencing judge's determination that Clinton's extra stab was not a defensive blow.

In sum, Clinton was convicted for intentionally stabbing an unarmed man more times than was necessary to defend himself. So we are satisfied that Clinton is "the kind of person who might deliberately point the gun and pull the trigger," *Begay*, 128 S.Ct. at 1587, and thus whom Congress had in mind when enhancing sentences for unlawful possession of a firearm by a previously convicted felon.

## III. CONCLUSION

The district court acted properly in denying Clinton's motion to suppress and in finding that Clinton had been previously convicted of a crime of violence under the Sentencing Guidelines. Therefore, we AFFIRM Clinton's conviction and sentence.